## CALHOUN v. RAYVILLE ICE & FUEL CO., Inc., et al. *

### No. 5059.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1935.

*Rehearing denied July 15, 1935.

Hudson, Potts & Bernstein, of Monroe, for appellant.

Warren Hunt, of Rayville, for appellee.

TALIAFERRO, Judge.

Plaintiff brings this suit to recover compensation for the maximum amount recoverable under the statute for total and permanent disability. He had been in defendant's employ for over ten years when he claims to have suffered the accident alleged upon for recovery. He was its local manager. His duties required him to perform many different kinds of labor, including the operation of ice-laden trucks and the doing of repair work to the ice plant in Rayville, La. He alleges that on December 4, 1933, while removing some planking from the top of an insulated ice tank wall of defendant's ice factory, preparatory to repairing the tank, it became necessary to remove several heavy upright timbers resting thereon, measuring six by six inches, seven feet long, one of which, at least, was attached to a wall by means of two by four timbers called "cleats"; that he was using a heavy iron wrecking bar, at an elevation even with his head, to pry the cleats from the wall, and that " * * * the cleat suddenly gave way and the post began to fall in the general direction of your

petitioner; that he stuck out his left arm to catch the post as it fell, in order to keep it from mashing the tops of ice cans, in which direction the post was falling; that the post struck him on the surface of the left shoulder about at the juncture of the shoulder and arm, and your petitioner, with his arm cupped attempted to break the fall of the post, but that the timber was too heavy and wrenched your petitioner down towards the floor, where he, being unable to break the fall, permitted the heavy timber to roll off of his arm so that it would not mash his arm."

He further avers that the severe blow and shock of the post striking his shoulder and the attendant twist and strain of his body rendered him immediately ill, the symptoms being severe pains in his left arm, left wrist and chest; that he felt faint, weak, and nauseated, and was compelled therefrom to cease work for the day and has not been able to perform any work since that time. The specific injury, averred by plaintiff as a direct result of the timber falling against him and the sudden physical strain and exertion incident thereto, is "acute heart attack and injury to the heart," producing the maximum disability alleged by him.

The answer of defendant is a general denial to each and every article of the petition. Further answering, defendant avers: " * * * That plaintiff is suffering from a chronic heart disease which has been present for a long period of time prior to the 4th day of December 1933,—that is chronic in its nature and which is in no way connected with, nor has the same resulted from any accidental, unexpected or unforeseen event, happening suddenly or violently, producing injury. Your respondent avers that the *disease or derangement has come on gradually over a long period of time and* that the disability resulting therefrom was not effected by accidental means." (Italics ours).

There was judgment for plaintiff for the compensation sued for and for $250 medical, physicians', and hospital bills, from which defendant appealed. Answering the appeal, plaintiff alleges that it is frivolous, taken for the purpose of delay, and in the expectancy that plaintiff would die before termination of the litigation.

Plaintiff gave the following testimony in support of the allegations of his petition, touching the alleged accident, to which he ascribes his present state of total disability, viz.: "I had a wrecking bar, which was

an iron bar weighing seven or eight pounds, two and a half foot long, and was prizing a cleat that supported this six by six or six by eight post to the wall and when I jerked this cleat loose, the post started down, it had been relieved from some strain or pressure that had been on it by the track and it came loose quite suddenly and I didn't have time to catch .hold of it in a proper way to lay it down on the tank tops but it fell against my chest or arm, and I tried to hold it up off of the tanks, it carried me down part of the way to the floor with it and I got out from under it and then I had a severe excruciating pain in my left chest and I stood around, fooled around a minute or two there, rubbing my shoulder, I told the boys that I had to knock off, I didn't feel like going on."

■ This version of the facts is corroborated by two helpers who were assisting him at the time. Its correctness is not seriously disputed. It is true, as contended, he sustained no external injuries or abrasions in his efforts to prevent the timber from falling against and damaging the tanks, but this was not necessary to constitute an accident, within the definition of that term as laid down by the Workmen's Compensation Law, viz.: " * * * The word 'Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom." Act No. 20 of 1914, §§ 38, 39, as re-enacted by Act No. 38 of 1918, p. 60, § 38.

If the physical exertion at the time caused internal injuries of a character, or activated pre-existing dormant disease or ailments to the extent, that a state of total disability was the consequence, the case is none the less compensable. Cases supporting and holding this doctrine are too numerous to require citation. They clearly fall within the definition above quoted.

■ Five or six years before the accident, Dr. J. C. Calhoun, of Rayville, plaintiff's brother, discovered that plaintiff's blood pressure was too high. From that time on his observation of plaintiff was more than casual. He had him closely examined by competent physicians in Shreveport, La., and Vicksburg, Miss., but no organic diseases were then discovered. However, the record does not disclose that the high blood pressure condition militated against plaintiff's performing efficiently the heavy duties of his employment until the year 1933. In the late spring or early summer of 1933, while engaged in replacing a wheel on a truck loaded with ice, en route to Delhi, plaintiff suffered a heart attack of such intensity that he was forced to abandon the task for a while. He felt a tingling sensation of pain in his left arm and hand, followed by weakness or exhaustion. This passed away sufficiently that he was able to continue the trip unaided, and returned to Rayville after delivering the load of ice. In the summer of 1933, while loading a heavy box onto a truck in the city of Monroe, he suffered another attack of like or similar symptoms, and again experienced one of more serious nature in September or October. All of these attacks temporarily incapacitated him for labor. Between these attacks and to December 4th, when the last one occurred; plaintiff regularly performed the miscellaneous duties of his employment, but at times felt mild symptoms of the ailment which manifested themselves in the more serious form at the times above mentioned. It fairly well appears that these attacks progressed in seriousness as time passed, culminating in that of December 4th. They invariably followed or were associated with performance of work requiring physical exertion in excess of the average.

It is clear, therefore, that the accident of December 4th arose in the course of plaintiff's employment with defendant. The next question to be determined is whether the disability he now complains of is a result, directly or indirectly, of an injury having causal connection with the accident; in other words, whether such disability was caused by injury or injuries sustained by plaintiff while performing services arising out of and incident to his employment. Defendant admits that plaintiff's present disability is a consequence of "disease or derangement which has come on gradually over a long period of time"; and it follows that, since he has regularly worked for defendant for ten years, if the sapping of his vitality and reduction of his powers of resistance to disease or trauma has been the result, such result has been attained while he was performing services to defendant under the terms of his employment.

Immediately after the accident, plaintiff was driven by auto to a sanitarium in the

city of Monroe, a distance of 24 miles from Rayville. Shortly after arriving there his condition became decidedly worse. He was suffering intense pain accompanied by symptoms the same as he had previously had. Opiates were administered to him; he lapsed into a state of at least semiconsciousness, which continued for two weeks. He was attended during this period principally by his physician brother, who was assisted by physicians of the sanitarium. He was confined to bed after returning home for some two weeks, and did not leave his room for an additional two or three weeks. These facts are here detailed mainly to reflect the fact that the attack plaintiff suffered on December 4, 1933, was by far the most serious he had experienced, and that the direct aftermath was of such a nature as to disclose unmistakably the very serious nature of the attack.

Physicians, when the case was tried (January 28, 1935), testified that plaintiff's disability, resulting from disease and accident, was total and permanent; that should he try to perform regular work such as he had been accustomed to perform, or tax his mental faculties as a normal man could do, the expected result would be a total collapse, mentally, or physically, or both, probably followed by death. They agree that the falling of the timber against plaintiff's body, coupled with the sudden physical effort on his part to control its fall to the floor, was entirely adequate to produce the conditions, in their opinion, they found him to have suffered immediately after the accident, viz. injury to the heart region resulting in thrombosis or embolism (blood clot in an artery or the heart), probably causing and followed by angina pectoris, a contraction of the heart arteries or an "interference with the circulation of the blood to the heart muscles," as said by Dr. Calhoun. He further states: "And any stimulus to the nervous system which would cause a contraction of the capillary circulation, both of the external capillaries or the internal, is liable to precipitate an attack, given angina, which might go on to embolism, if the circulation was interfered with long enough for that blood to form a clot."

They agree that his present ailment is angina pectoris.

There is nothing whatever in the record to suggest that plaintiff is assuming an extent of disability not warranted by true conditions. He is only 42 years old, and, excepting the ailments herein discussed, is physically sound. His position with defendant for over ten years was one of responsibility. A great deal rested upon him as the manager of its Rayville plant. He was paid a flat salary of $35 per week, plus 10 per cent. of the company's annual profits. He was entitled to free house rent. It is wholly improbable he would voluntarily give up these attractive emoluments for the reduced income of $20 per week sued for.

We conclude from the well-established facts of the case, when weighed in the light of the medical evidence introduced by plaintiff (defendant offered none), that for many years he has suffered arterial disease (hypertension), which gradually and progressively encroached upon and added to the normal functions of the heart to the extent that its power to discharge efficiently the constant demands of the blood's circulation had been materially impaired and that the accident of December 4th caused an injury to the overtaxed heart or the arteries closely related thereto, degenerating to the final result the physicians found him to be suffering from.

We have studied with unusual interest the able and elaborate brief of defendant's learned counsel in support of their position that plaintiff's suit "is simply the attempt of a man with a bad heart to get compensation from his employer for his diseased condition." They further say, "His condition was not brought on by his employment, nor has it any connection therewith." They concede, however, that the jurisprudence of the state is now well established that, if the condition of a diseased heart or other organ of the body is so aggravated by an accident to the employee, while performing the duties of his employment, as to produce disability, such a case is compensable. We have found and hold that plaintiff's case clearly falls within the rule expounded in the referred to line of decisions. The most recent on the subject are Jackson v. Travelers' Ins. Co. (La. App.) 151 So. 790; Renfrow v. Caddo Parish Police Jury et al. (La. App.) 155 So. 291, 294.

The Jackson Case went further than any case decided prior to that time by our courts. The Renfrow Case undertakes to interpret, to its logical conclusions, the Jackson Case, in the course of which we said: "Our understanding of the Jackson Case, referred to above, is that it holds that where a laborer's vitality and powers of physical resistance have been reduced by ravages of disease, progressively sapping vitality over a long period, while he is employed, and that without performing any duty requiring effort be-

yond the regular routine of his work, and without any strain in excess of that which he is continuously subjected to, a diseased organ gives way from which death results, that such death is caused from an accident arising out of employment within the meaning of the Workmen's Compensation Law."

The principle thus emphasized fits the present case like a glove. Renfrow's trouble was high blood pressure of long standing. While performing his usual duties, a blood vessel of the eye ruptured, producing blindness in that organ. On the authority of the Jackson Case, we held that the facts supported the contention that his injury was due to an accident.

In the Jackson Case the Supreme Court found that the rupture of the wall of deceased's stomach was caused from lifting a cross-tie, and that the widow was entitled to compensation although no unusual effort was put forth to raise the tie and notwithstanding the fact that the walls of the stomach had been thinned by the ravages of syphilis to the extent that a break thereof could have occurred from the slightest physical exertion.

■ We do not think there is any merit in appellee's contention that the appeal prosecuted herein is frivolous. Appellant's contentions were seriously urged in oral argument before the court, and are ably covered by written brief.

Judgment appealed from is affirmed.