269 P.2d 1102

HOGAN et al.

v.

CITY OF HOT SPRINGS.

No. 5635.

Supreme Court of New Mexico.

April 30, 1954.

Rehearing Denied May 19, 1954.

W. C. Whatley, W. B. Darden, LaFel E. Oman, Las Cruces, Quincy D. Adams, Albuquerque, for appellant.

J. Benson Newell, Garland, Sanders & Cooney, Las Cruces, for appellees.

SADLER, Justice.

The City of Hot Springs, a municipal corporation, as appellant, seeks to reverse a judgment in severalty against it totaling $19,830, rendered in varying amounts in favor of five different appellees appearing without objection as co-plaintiffs in an action for damages found to have resulted to each from the city's negligence in failing to protect their homes and premises from flood waters following a heavy downpour of rain. The parties will be referred to here as they were designated below.

It may be well to state at the outset that the defendant, City of Hot Springs (now the City of Truth or Consequences), New Mexico, at all times material, was a municipal corporation organized and existing under the laws of the State of New Mexico.

As already indicated, this judgment arose out of an action for damages done to the premises of the various plaintiffs, who joined in seeking recoveries, by a flash flood following a severe rainstorm, at Hot Springs, in Sierra County, New Mexico, on the night of July 12, 1950. The premises of plaintiffs were located in "Hogan Homesites," a subdivision lying immediately south and west of the corporate limits of the city. U. S. Highway 85, the principal artery of travel between Albuquerque and Las Cruces, runs in a northeasterly-southwesterly direction immediately north of the

premises of plaintiffs. It is a two-lane, black-topped highway constructed about 1934 and on the date in question was in substantially the same condition as when completed by the State Highway Department.

The properties of the different plaintiffs were purchased and improved by them subsequent to the construction of the highway mentioned. Foothills lying to the northwest of said highway in the area in question are a distance of some 1,700 feet from the highway at the closest point. A dike frequently referred to in the testimony and designated on plaintiffs' exhibit 26 as dike "A", extends from the highway to the foothills. When constructing Highway 85 the New Mexico Highway Department placed under it for the purpose of draining water from the north of the highway to the south thereof, two culverts consisting of three concrete barrels each, the openings through each of which have a total area of 120 square feet. One of the culverts was that already mentioned, at dike "A", being the most westerly and the other near dike "B" some 1,300 feet easterly from dike "A", also frequently referred to in the testimony and so shown on plaintiffs' exhibit 26. The respective properties of the plaintiffs herein involved lie approximately midway between the culverts mentioned and just south of the highway.

The bottom of culvert "A", being the most westerly of the two culverts, is approximately three feet lower than the bottom of culvert "B", the most easterly culvert. The highway between the two culverts is higher than the terrain on either side thereof, being an average height of about two feet above the terrain lying immediately to the northwest thereof. The terrain lying northwest of the highway slopes upward to the foothills from the foot of the embankment made by the highway. The surface of the highway between the two culverts is not level but has a gradual slope from culvert "B" toward culvert "A", the low point in the dip between the two culverts is directly opposite the properties of the plaintiffs. This low point is about 18 inches lower than the level between the surface of the highway at the two culverts.

Emerging from the foothills to the northwest of the highway and immediately easterly of the north end of dike "A" is a large arroyo or canyon known as Mud Springs Arroyo or canyon. This arroyo or canyon has a length of approximately 13 miles and drains an area of approximately 17 square miles. The runoff from the arroyo normally would drain into the area between dike "A" and the high ground shortly to the north and east of dike "B". Two other arroyos of lesser size lying northeast of Mud Springs Arroyo also drain into this area.

The only outlets under the highway through which water from the three arroyos may pass to the opposite side thereof are the two culverts mentioned. When the flow of water from the canyon or arroyos exceeds the carrying capacity of the culverts the excess water is either retained by the highway or flows over and across the same. On several occasions between 1934 and 1950 waters from these arroyos have overflowed the highway and flowed over and across the property in question which now belongs to the plaintiffs.

The dike designated in the record and on plaintiffs' exhibit 26 as dike "B" was constructed originally by the New Mexico Highway Department and extended from a point on the highway immediately westerly of culvert "B" in a northwesterly direction for a distance of approximately 1,200 feet toward and into the mouth of Mud Springs Arroyo. It diverted and directed toward culvert "B" part of the waters from Mud Springs Arroyo as well as from the other two arroyos. The dike "B" when intact over its entire length of 1,200 feet, if culvert "B" were blocked or carrying its capacity flow of water, would operate to impound water to the north and east thereof.

On the night of July 12, 1950 about ten o'clock p. m. there was an unusually large flow of water from Mud Springs Arroyo, which flow was diverted by dike "B" toward culvert "B" in an amount which exceeded and overtaxed the carrying capacity of the culvert and was impounded and formed a lake to the east and north of the dike, the excess waters being retained and restrained by the dike and highway embankment. The waters so impounded overflowed and broke dike "B" in several places and with great velocity rushed down the slope of the intervening ground between the two dikes "B" and "A" to the highway embankment and over and across the highway, overwhelming the premises and property of the plaintiffs in a flash flood.

The flood waters mentioned attained a depth of three or four feet over the premises of the plaintiffs, striking first with terrific force and surge and quickly attaining their greatest depths. It then flowed on toward the Rio Grande to the south and west, the whole flood subsiding in the matter of some ten minutes. The quickly moving water carried away and destroyed considerable movable property and articles of the plaintiffs and in addition deposited on and over their properties great quantities of silt, mud and other debris. The damage thus suffered by them was occasioned not alone by the amount of water but as well by the velocity of the flow and the deposit of silt, mud and debris with which the waters were laden.

After its initial construction by the State Highway Department, dike "B" was maintained, repaired and kept by the defendant city especially in and during the several years prior to July 12, 1950 and the city elected and undertook so to maintain the dike. It operated to protect and preserve property belonging to the defendant city lying between dike "B" and the highway and as well operated to protect and preserve the highway, in that the dike tended to divert flood waters from the arroyos away from the property of the city and the highway toward culvert "B" and thence under the highway through said culvert. The city maintained and repaired the dike for such purposes. Dike "B" also operated to protect the property of the inhabitants of the defendant city from damage by flood waters by diverting and directing them to the culvert at the southeast end thereof and from the culvert to the Rio Grande in a channel created therefor.

The defendant city was negligent in that it undertook to construct and maintain the dike and by it to divert and direct waters of the arroyos, but in so doing it failed and neglected to build, maintain and repair the dike strong enough and in such condition as to hold against and withstand the weight and pressure of the waters impounded back of the dike and failed and neglected to provide an outlet for said waters sufficient to relieve the pressure and flow and thus to guard against the breaking of the dike by the waters so impounded.

The flow of water on the occasion in question was great and unusual, but it was not unprecedented as flows as great or greater had occurred in this place within the score of years preceding July 12, 1950. The impounding of this quantity of water and the breaking of the dike were not attributable to an "Act of God."

The defendant city failed to construct, maintain and repair dike "B" so as to prevent it from breaking and allowing the water impounded by it to be cast upon plaintiffs' lands and property in great and damaging quantities; and defendant was negligent in the manner in which it maintained the dike, such negligence was the proximate cause of the dike breaking on July 12, 1950 and the resulting damage to plaintiffs' property. The waters impounded by dike "B" when it broke, were the waters which flowed across highway 85 and on to and over plaintiffs' lands.

The flood waters operating as aforesaid occasioned the injury, loss and damage to certain of the plaintiffs as follows:

W. B. Hogan, in the sum of ..... $8500.00
J. E. Cornett, in the sum of ..... $3250.00
Phillip Kauffman, in the sum of.. $2500.00
William S. Summers, in the sum of $3580.00
Mabel Treadway, in the sum of .. $1950.00

Having found the facts as hereinabove recited, the trial court drew the following conclusions of law therefrom, to wit:

"Conclusions of Law

"1. The defendant City of Hot Springs (now Truth or Consequences,) New Mexico, was negligent in maintaining, constructing and repairing said Dike 'B' in the manner in which the same was done, and in failing to repair, construct and maintain said dike strong enough and in such condition as to withstand a foreseeable flood and flow of water such as resulted in the breaking of the dike and the flooding of plaintiffs' property on July 12, 1950; and said negligence was the proximate cause of the plaintiffs' damage aforesaid.

"2. The plaintiffs named in Finding No. 27 above are entitled to have and recover damages from the defendant City in the amount stated as to said plaintiffs respectively, for and on account of the negligence, damage and injury aforesaid.

"3. The plaintiff Mabel Treadway is entitled to recover nominal damages only in the sum of $1.00.

"4. The plaintiffs, except Bibo and Williams, are entitled to recover their respective costs.

"5. The flood in question was not an 'act of God.'

"6. The dike of which complaint is made acted to protect property belonging to the defendant and to inhabitants of the defendant municipality, and the defendant could lawfully construct and maintain such a dike for such purposes, provided that the same were built and maintained so strongly and so well as to control and prevent flood waters from breaking over and doing damage; but in erecting and maintaining such a structure the defendant acts at its own risk and assumes the responsibility of keeping it strong and safe, except as against acts of God and unforeseeable happenings."

The court thereupon rendered in one judgment against the defendant city the several awards of damages for the respective amounts set opposite the names of individual plaintiffs hereinabove, amounting in the aggregate to $19,830. The defendant prayed and was allowed an appeal to this Court for a review of the judgment so rendered against it and argues under four separate points the grounds of error relied upon for reversal.

■■ The first two points virtually resolve themselves into one questioning sufficiency of the evidence to support the find-

ings made. Hence, what we say on the first point will dispose of the second and our observations, generally, touching relevant rights and duties of a municipality in protecting its residents against damage from the elements will render unnecessary comment on the third point. So it is that we now turn our attention to the City's challenge of the facts made the basis of the first claim of error.

If the evidence, fairly appraised, supports the findings made it seems obvious the awards of the trial court in favor of the respective claimants, then merged in the judgment rendered, must be sustained. A careful reading of the record satisfies us there is substantial evidence present to support each material finding adopted by the trial court. It is true that the separate findings of the trial court in one place state that dike "B" was originally constructed by the State Highway Department, and in another place state that dike "B" was constructed and maintained by the City. This is, seemingly, a direct conflict. However, under Guaranty Bank Corp. v. Western Ice & Bottling Co., 28 N.M. 19, 205 P. 728, and Hartzell v. Jackson, 41 N.M. 700, 73 P.2d 820, it is the duty of this Court to try to reconcile such an inconsistency if that is possible.

■ In the instant case, there is sufficient testimony concerning the heightening of dike "B" by the City and the deepening of the bed behind that dike to suggest that the work done by the City on dike "B" not only constituted repairs and maintenance, but so increased the carrying capacity of the dike as to take on the character of actual construction, with a resulting increase in the quantity of waters impounded. Under these circumstances, the responsibility incident to construction can be placed properly on both the State Highway Department and the City as do the court's findings in reference to construction. In addition to the foregoing, the evidence is substantial that the City assumed the duty and obligation of repair and maintenance; a very short time prior to the particular flood, the City had its engineer inspect the dike with the idea of rebuilding it and increasing its height "with a view to repairing it before the rains came." Further, we find substantial evidence to sustain the allegation of the City's negligence in the repair and maintenance of dike "B."

It should be stated at this point that no error is assigned by counsel for defendant City with respect to the damages awarded, either as to the respective amounts or the method of arriving at such amounts. Hence, our only concern is to ascertain whether actionable negligence on the part of the City appears in the evidence to support the liability imposed by the court. As to the findings themselves, we think a mere

reading of them demonstrates their support of the judgment rendered.

It is the obvious theory of the plaintiffs' case that by reason of the maintenance of Dike B, under the conditions shown, a large body of water was impounded within the triangle formed through its junction with the somewhat lower dike made by the grade of the highway itself; and that this compact body of water when weighted by the pressure of additional waters coming down Mud Springs Canyon and the two smaller arroyos to the north and east, caused Dike B to break at three separate points in such widths as to release the whole quantity of stored waters in a rapidly moving body, which inundated the premises of plaintiffs, causing them heavy damage from silt and debris. This theory found support in the findings as a reading of them will disclose.

It is not a sufficient answer to say that the surface of the highway being somewhat lower than the average height of Dike B, water would necessarily overflow it before reaching the crest of Dike B, thereby releasing pressure on the latter and casting water over and across the premises of plaintiffs in any event. Possibly so, but as the trial court seemed to think, not to the depth or extent, nor with the velocity and sweep, actually experienced when the three separate breaks threw a head of water across and over their properties sufficient to cause the heavy damage detailed in the findings. That a municipality as well as a private individual may be held liable in damages for causing or permitting an accumulation of water to be impounded on its premises under such conditions as to cast it in a rapidly moving body on the premises of others to their injury, seems well settled. It is an undisputed fact that Dike B was on city property. See, Rix v. Town of Alamogordo, 42 N.M. 325, 77 P.2d 765, and cases cited; also, compare Martinez v. Cook, 56 N.M. 343, 244 P.2d 134.

The position of counsel for the defendant is understandable in the claim that plaintiffs' damages are more to be laid to their own fault, than that of the City, having knowingly constructed homes in the very mouth of an arroyo, ordinarily dry, yet one which on occasions could become, and in times past had become, a raging torrent from flash floods. This much may be conceded, yet the fact does not excuse, nor does it mitigate, the damages suffered by plaintiffs from the casting over and across their properties of the large body of water impounded by Dike B, which but for its presence would have permitted the waters to flow by plaintiffs' premises in a diffused state, inflicting only slight damage; or which in the alternative, but for its negligent maintenance and repair, would have held back such waters until, by gradual recession of the flood, they could escape in

like fashion to follow their natural course to the Rio Grande.

We are not unmindful of the apprehension shared by defendant's counsel with the city fathers concerning potential liability of defendant from flash floods in the future, in view of the fact that the City is built at the foot of numerous hills and that a large number of arroyos empty into the area occupied by the City. It may reassure to remind them that the City is not a guarantor of its residents against damage from flash floods. Take the case at bar, if the flood which damaged plaintiffs had resulted, without Dike B entering the equation, it would be difficult to visualize liability on the part of the City. It would appear to be a case of *damnum absque injuria*. For instance, another rainfall of intensity and volume equal to this one followed it only three days later, yet the waters were diffused over the area, due to breaks in Dike B from the previous flood, without either damage or injury to plaintiffs. Indeed, due to fact the waters from the later rainfall were not impounded, they never reached the flood stage at all. Had they done so, to the extent here shown, if not to be classified as an Act of God, thus affording immunity from liability to defendant on that score, the plaintiffs' own negligence in building where they did would afford the City the same protection from liability.

When, following good engineering advice and practice, a city has done all that can reasonably be expected of it to protect its citizens from damage due to the elements, any loss resulting therefrom must be classified as *damnum absque injuria*. The damages suffered here do not fall in that category. Even so, but for the factor of impounding under conditions shown, it is difficult to see liability in this case. The rationale of plaintiffs' position, of course, compels them to affirm with equal positiveness, that if Dike B be removed from the equation, there would have been no impounding and, hence, no damage.

The finding of the trial court that the flow of water from rainfall on the occasion in question, though great and unusual, was not unprecedented as demonstrated by flows as great or greater in this area within a score of years preceding the date of this flood, removed from material consideration the impounding of the body of water in question and the breaking of the dike as an "Act of God." There was evidence to sustain the trial court's finding and support its conclusion in this behalf.

It follows from what has been said that the judgment reviewed must be affirmed, and it is so ordered.

McGHEE, C. J., and COMPTON, LUJAN and SEYMOUR, JJ., concur.