365 P.2d 671

Allen REYNOLDS, Claimant, Plaintiff-Appellant,

v.

RUIDOSO RACING ASSOCIATION, INC., a Corporation, Employer, and Fidelity and Casualty Company of New York, a Corporation, Insurer, Defendants-Appellees.

No. 6791.

Supreme Court of New Mexico.

Aug. 16, 1961.

Rehearing Denied Nov. 8, 1961.

James M. H. Cullender, Thomas B. Forbis, Roswell, for appellant.

Atwood & Malone, R. D. Mann, Roswell, for appellee.

MOISE, Justice.

This is an appeal by a workmen's compensation claimant from a judgment, granting total disability payments against his employer and the employer's insurer, of $30 per week from August 7, 1958, to December 7, 1958, and 10% permanent disability payments, or $3 per week, from December 8, 1958, for 532 weeks, 4 days, plus $300 attorney fees.

The facts are briefly as follows: On August 7, 1958, while claimant was employed by the employer, Ruidoso Racing Association, Inc., as a part time veterinarian and "pickup man," at the race track operated by it, he was on a horse when a

rider called upon him for assistance. When claimant started after this rider, his horse suddenly turned and went forward whereupon claimant felt sudden pain in his back. He immediately notified the general manager of the employer corporation, was taken to the hospital, and has never returned to work.

It appears that claimant has spent most of his life on ranches and in ranch and related work. On August 7, 1958, as a "pickup man" it was his duty to ride a horse furnished by his employer and to pick up horses on the back side of the track. He had been employed as veterinarian assistant for about a month, and had been given additional work as "pickup man" three days before the date of his injury.

Claimant had done various kinds of hard work before coming to work for this employer, including horseback riding, riding in a jeep, pulling sucker rod from a well, loading bales of straw, and general ranch work.

Prior to August 7, 1958, claimant had suffered at least two fractured vertebrae which had healed satisfactorily. However, he did continue to have back pains. On August 7, when the horse started to run as already noted, claimant suffered a minimal compression fracture of T–9 vertebrae in his spine. Also, subsequent to August 7, 1958, while stepping off a curb he suffered another compression fracture of L–2 vertebrae. This occurred on May 11, 1959.

On August 7, 1958, claimant was seen by a Dr. Horton, who placed him in the hospital, took x-rays of his back, and when Dr. Horton considered him able to travel he was referred to a Dr. Leonard, an orthopedic surgeon in El Paso, Texas. It appears that the healing process of the fractured T–9 vertebrae proceeded uneventfully and that on December 7, 1959, he would have been able to return to work, except that Dr. Leonard discovered that claimant was suffering from a disease known as osteoporosis, or unusually porous and fragile bones. Dr. Leonard testified that in his opinion this condition was probably caused by rheumatoid spondylitis from which claimant was suffering. He also testified that a Dr. Craig, to whom claimant had been referred, did not agree that this was the cause and that he described the ailment as being of unknown cause. Dr. Leonard further testified that with the osteoporosis present claimant was 100% disabled and this condition would continue until the cause was determined and it was then satisfactorily treated, unless it should correct itself, and this he could not forecast. He estimated 10% disability resulting from the injury of August 7, 1958. Dr. Horton testified that in his opinion the fracture of the vertebrae on August 7, 1958, did not cause the total disability but contributed to it, and would have the effect of aggravating a pre-existing condition.

The court made the following findings of fact:

"13. Plaintiff suffered temporary total disability of the body as a whole by reason of the accidental injury of August 7, 1958, from the date of injury to December 7, 1958.

"14. Plaintiff suffered ten per cent permanent partial disability of the body as a whole by reason of the injury of August 7, 1958, from December 7, 1958, to the time of trial.

"15. Plaintiff could have returned to his regular work as pickup man and veterinary assistant for defendant Ruidoso Racing Association on December 7, 1958, had it not been for the soft bone condition of plaintiff.

"16. The Court further finds that this soft bone condition of the plaintiff is caused by the disease of osteoporosis, the cause of which, to this individual, is unknown according to the medical findings.

"17. Plaintiff's injury of August 7, 1958, was caused by the sudden turning and going forward of the horse upon which plaintiff was riding and such action on the part of the horse was expected and looked for since the horse had done the same thing on previous occasions while plaintiff was riding him.

*     *     *     *     *     *

"19. That the plaintiff suffered an injury while engaged on his job as 'pickup' man, arising out of and in the course of his employment; and while riding a mount furnished him by the manager of the said defendant corporation on the morning of the 7th day of August, 1958.

*     *     *     *     *     *

"22. The Court further finds, as a fact, that plaintiff is, at this time totally and permanently disabled from doing gainful and useful work that he is capable of perfoming.

"23. The Court further finds that his permanent disability from doing gainful useful work was not the result of the injury of August 7, 1958, but that he had been totally and permanently disabled prior to that date from doing the type of work he was doing because he was suffering from osteoporosis, the cause of which to this individual is unknown."

While complaining of certain of these findings and of the court's failure to make other findings requested by him, claimant's appeal is principally based on the fact that the court allowed him only 10% disability while finding him totally disabled. He asserts that under the facts he is entitled to total and permanent disability payments.

As we read the findings, quoted supra, they are to the effect that claimant was totally and permanently disabled prior to

the injury of August 7, 1958, but nevertheless, on that date he suffered an injury arising out of and in the course of his employment which caused total temporary disability from that date to December 7, 1958, and 10% permanent partial disability thereafter to the time of trial. We perceive in these findings an inconsistency which it is our duty to resolve if possible. Hogan v. City of Hot Springs, 58 N.M. 220, 269 P. 2d 1102.

From an examination of the evidence it seems clear that claimant, because of his bone condition, probably shouldn't have been working, and might be described as being totally disabled medically. However, the fact remains that he was employed and had been performing his duties as an assistant veterinarian for approximately one month and in addition the duties of a "pickup man" for the three days before August 7, 1958. Accordingly, regardless of what his condition indicated to the doctors he was not so disabled as to be unable to work, and was not actually totally disabled. Lee Moor Contracting Co. v. Industrial Commission of Arizona, 61 Ariz. 52, 143 P.2d 888. The situation is comparable to that present in Ruiz v. Hedges, 69 N.M. 75, 364 P.2d 136, where we held that a man could not have been totally and permanently disabled where at all times for more than two years after the claimed accident he had been employed in the same or similar position as he occupied when injured.

The following language quoted from the case of Keller v. Anderson Sand & Gravel Co., 292 Mich. 625, 291 N.W. 32, 33, is particularly relevant:

"There is testimony indicating it would have been impossible for plaintiff to have worked if he had had any such condition as that complained of. But the fact remains he did the hardest kind of physical labor, made no complaint that the work was too hard for him, and, though it is contended that spondylolisthesis is congenital, nevertheless it seems to be established that it may result from traumatic causes. Based upon the facts, this case presents the picture of a man who, prior to the accident, was able to do any and all types of work, and thereafter the symptoms of which he now complains developed and progressed to a point where it became impossible for him to do the type of work which he had previously been able to do."

We note the cases of Christensen v. Dysart, 42 N.M. 107, 76 P.2d 1; Webb v. New Mexico Pub. Co., 47 N.M. 279, 141 P. 2d 333, 148 A.L.R. 1002; Elsea v. Broome Furniture Co., 47 N.M. 356, 143 P.2d 572; and Gilbert v. E. B. Law & Son, Inc., 60 N.M. 101, 287 P.2d 992, in all of which the claimants suffered injuries in the course of their employment which would not have incapacitated them absent a pre-existing condition.

In Christensen v. Dysart, supra, the deceased workman fell from a platform on which he was working as a carpenter. Some six weeks to two months earlier he had consulted a physician who diagnosed his trouble as coronary thrombosis, and advised him to stay in bed until he could get further medical advice. Employer took the position that the workman died of heart disease and not from injuries sustained in the fall as found by the court. We there concluded the proper rule to be that if a workman falls and an injury results, the employer is liable even though a pre-existing idiopathic condition caused the fall.

The case of Elsea v. Broome Furniture Co., Inc., supra, is even more helpful. In that case the claimant had suffered several accidents while employed by the defendant. We quote the following pertinent language from that case:

"Notwithstanding claimant may have been suffering from some other ailment at the time, the injury relied upon is compensable if it was the immediate cause of disability. Robinson v. Mittry Bros. [43 N. M. 357, 94 P.2d 99], supra. *Even conceding a pre-existing condition of arthritis, as defendants insist is the case here, and the fact that it may have contributed somewhat to the present disability, that, nevertheless, would not preclude payment of compensation for injury received from a fall.* Kamp v. Disney, 110 Colo. 518, 135 P.2d 1019. 'Neither a congenital weakness

nor a pre-existing disease will render noncompensable an injury received under conditions which would otherwise make it compensable.' 1 Honnold on Workmen's Compensation, § 98." (Emphasis supplied.) [47 N.M. 356, 143 P.2d 582.]

The rule was stated as follows in Webb v. New Mexico Publishing Co., supra [47 N.M. 279, 141 P.2d 344]:

"It is admitted that appellee's injury arose out of, and was sustained in the course of, his employment. His duties required him to wash his hands to prevent soiling the products of his labor. *Except for his idiosyncrasy, it is true, he would not have suffered an injury, but the same may be said of a workman who, but for a defective physical condition, would have withstood the strain of his ordinary labors, yet suffered a compensable injury because of an exertion too great for one in his condition of health.* Such are workmen who have heart afflictions, tuberculosis, etc., whose death results from strains or labor too heavy for their strength. See the following cases: Almquist v. Shenandoah Nurseries, 218 Iowa 724, 254 N.W. 35, 94 A.L.R. 573; Calhoun v. Rayville Ice & Fuel Co., La.App., 161 So. 660; Southern Shipping Co. v. Lawson, D.C., 5 F. Supp. 321; Eastman Co. v. Industrial Accident Comm., 186 Cal. 587, 200 P. 17; Baltimore & O. Ry. Co. v. Clark,

supra [4 Cir., 59 F.2d 595]; Scarborough v. Beardmore, 52 Idaho 180, 12 P.2d 771; Belcher v. Des Moines Elec. L. Co., 208 Iowa 262, 225 N.W. 404; Lee v. Lone Star Cement Co., 142 Kan. 349, 46 P.2d 864; Patrick & Tillman Drilling Co. v. Gentry, 156 Okl. 142, 9 P.2d 921.

"As stated in Baltimore & O. Ry. Co. v. Clark, supra, the statute 'says nothing about unusual or extraordinary conditions [of employment] * * * that he [the workman] may have been rendered more readily susceptible to injury than they [other workmen] were by reason of his physical condition cannot affect the matter.' * * * "

In the case of Gilbert v. E. B. Law & Son, Inc., supra, we again held that the question of compensability is not affected by the fact that because of a pre-existing physical condition a workman was rendered more susceptible to injury than are workmen normally.

■ From the foregoing it is apparent that this court has upheld the right to compensation where an injury was accidentally incurred and disability resulted therefrom even where, as here, the workman was suffering from a pre-existing disease or infirmity, absent which there would have been no injury. It follows that findings quoted supra, except for finding 23, are sufficient

basis for the court's conclusion that claimant was entitled to compensation, and that finding 23 should be interpreted as meaning that prior to August 7, 1958, by virtue of the osteoporosis with which claimant was afflicted he was *medically* disabled to do any work, although actually he was working. As already pointed out, he accordingly was not totally and permanently disabled before the accident. In addition, the court found that 10% of the permanent disability was attributable to the August 7 accident. From all this it must follow that claimant is entitled to compensation since before August 7 he was not so incapacitated as to be unable to work, but is now totally and permanently disabled to perform any work which he is qualified to do, and 10% of this disability stems from the injury of August 7 with the balance resulting from his preexisting physical condition.

■ Is he entitled to disability payments as if 10% permanently disabled or to 100% for total permanent disability? The injury having occurred in 1958, the appeal must be resolved under the law as it existed prior to the adoption of Chap. 67, N.M.S.L.1959.

Before passing to the question for decision as stated above we would point out that employer argues strenuously that the court did not find and there is no evidence to support any finding that the pre-existing bone condition was in any way aggravated or accelerated by the injury of August 7,

1958. We have related the testimony of the medical experts and the court's findings concerning the injury and the fact it arose out of and in the course of employment and that claimant is 100% disabled.

We recognize that this court on occasion has stated that to entitle an employee to compensation for disability resulting from an accidental injury together with a pre-existing condition, there must be "aggravation" or "acceleration." Gilbert v. E. B. Law & Son, Inc., supra; Seay v. Lea County Sand & Gravel Co., 60 N.M. 399, 292 P.2d 93. Be this as it may, we have never been called upon to pass directly on a situation such as the one here present where there is a causal connection between the pre-existing condition, the accidental injury and the resulting disability, without any finding of "aggravation" or "acceleration." Although there was evidence which would have supported such a finding, it was not made. Likewise, although appellee requested a finding that there was no aggravation or acceleration, this likewise was not found by the court. Where, then, does this leave us?

We might return the matter to the trial court to make a finding on this material issue as was done in Springfield Dist. Coal Mining Co. v. Industrial Commission, 303 Ill. 528, 135 N.E. 792. However, we have concluded that this is not required. Our reasoning follows:

It is clear from the fact of the osteoporosis, the accidental injury, the 10% permanent disability remaining from the August 7th injury, and the total disability present, that a question of the right to recover compensation for total permanent disability is present even though there may not have been any aggravation or acceleration of the osteoporosis by the injury. In 1 Larson on Workmen's Compensation Law 170, § 12.20, the rule is stated thus:

> "Pre-existing disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. * * *"

Again, in Volume 2 at page 56 (§ 59.20) Larson has the following to say:

> "Nothing is better established in compensation law than the rule that when industrial injury precipitates disability is compensable, and, except in such as heart disease, cancer, back weakness and the like, the entire disability from a latent prior condition, three states having special statutes on aggravation of disease, no attempt is made to weigh the relative contribution of the accident and the pre-existing condition to the final disability. Ap-

portionment does not apply in such cases, * * *."

Attention is directed to the language "combined with" appearing in the first quotation, and the verb "precipitates" appearing in the second. Also, a reading of numerous cases from many jurisdictions merely serves to convince us that these terms have all been used more or less interchangeably. The best demonstration of this fact is found in the case of Harding Glass Co. v. Albertson, 208 Ark. 866, 187 S.W.2d 961, where the decision is based upon a finding of "aggravation" and "acceleration." However, in support of the rule which is announced, 4 Schneider on Workmen's Compensation 543, § 1328, is cited where it is stated that if conditions of employment *"tend* to increase an employee's blood pressure sufficiently to cause a cerebral hemorrhage, such result constitutes a compensable accident * * *."

Next, follows a quotation from McGregor and Pickett v. Arrington, 206 Ark. 921, 175 S.W.2d 210, 213, where the following language is found:

"If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment."

The next case cited is J. L. Williams & Sons, Inc. v. Moore, 206 Ark. 766, 177 S.W.2d 761, 762, from which the following is quoted:

"It is sufficient if the accident, *coupled with* a non-disabling malady produced disability which would not have occurred at that time but for the trauma." (Emphasis supplied.)

This is followed by the following quote from Herron Lumber Co. v. Neal, 205 Ark. 1093, 172 S.W.2d 252, 254:

"Injury from strain or overexertion *due to* a physical condition predisposing the employee to injury is an injury within the terms of the various workmen's compensation acts." (Emphasis supplied.)

From the foregoing it is clear that in the same jurisdiction several terms have been used to describe the circumstances under which a claimant may be entitled to compensation even though suffering from a pre-existing condition.

We think the best exposition of the rule is contained in the case of National Homeopathic Hospital Ass'n of District of Columbia v. Britton, 79 U.S.App.D.C. 309, 147 F.2d 561, 564, being a case where the employee fell while working and fractured his right kneecap. In previous accidents, not connected with his employment, the same kneecap had been fractured and his left leg and left arm had been amputated. Because of the kneecap fracture "combined with"

the previous fracture and amputations he was totally and permanently disabled. The majority of the court stated the rule thus:

"In a negligence case, the question is not what the accident would have done to a different man but what it actually did to its victim. This is equally true in compensation cases. Therefore the employer must, in general, compensate the workman for the consequences of an accident although his previous defects *cooperated in producing them.*" (Emphasis added.)

Chief Justice Groner in a dissenting opinion states the rule as follows:

"For, as was said by the New York Court of Appeals (Schurick v. Bayer Co., 272 N.Y. 217, 5 N.E.2d 713), and as has been said by us, and indeed by practically all the circuits, weakness, whether pathological or traumatic, which does not become manifest until a subsequent accident, is not ordinarily thought of as prior disability under any provision of the Act. And this generally accepted view is borne out by the great volume of decisions holding that a subjective ailment, as a diseased heart, a diseased kidney, or a congenital deformity, or a pathological condition *contributing to* an injury or a death, does not relieve the employer from the obligation of total indemnity." (Emphasis supplied.)

To like effect are O'Brien v. Manchester Yarn Mills, 95 N.H. 118, 59 A.2d 172; Gagnon's Case, 144 Me. 131, 65 A.2d 6; F. H. Gilcrest Lumber Company v. Rengler, 109 Neb. 246, 190 N.W. 578, 28 A.L.R. 200; Nease v. Hughes Stone Co., 114 Okl. 170, 244 P. 778; Scott v. Alaska Industrial Board, D.C., 91 F.Supp. 201; Garcia v. Texas Indemnity Ins. Co., 146 Tex. 413, 209 S.W.2d 333; Contractors Service & Supply Co. v. Chism, Ky.1958, 316 S.W.2d 840; Shivers v. Biloxi-Gulfport Daily Herald, 236 Miss. 303, 110 So.2d 359; 28 A.L.R. 204; 60 A.L.R. 1299, 1323; and many cases cited in note 75 to the text of § 12.20 in 1 Larson on Workmen's Compensation Law, quoted above.

It will be noted that several of the cases cited arose in situations where the court was considering whether or not the second injury fund should be responsible for the portion of compensation attributable to the condition existing prior to the accidental injury of the employee. As pointed out by Larson in Vol. 2, at page 58, § 59.31, of his work on Workmen's Compensation Law, second injury funds were devised to answer the problems presented by situations where the law required the employer to stand the cost of total disability even though such disability resulted in part from a pre-existing condition, as well as in the unsatisfactory operation of a rule of apportionment. Although 44 states have second injury funds as a means of answering the dilemma pre-

sented by dissatisfaction with rules of full responsibility and the rule of apportionment, New Mexico is one of the six that has never established such a fund. The reason may possibly lie in the fact that the problem we are here called upon to resolve has never before been presented to the court.

From all the foregoing it is crystal clear that the requirements of "aggravation" or "acceleration" are not to be applied literally, nor do they delimit the right to recover. We are of the opinion that where there is a direct relationship or causal connection between the accidental injury and the resulting disability the employee is entitled to compensation to the full extent of the disability even though attributable in part to a pre-existing condition, notwithstanding acceleration or aggravation may be absent. It must be clear that there must be some causal connection—not a case where a man is suffering from a compensable injury to an arm and is then struck by a car while crossing the street, or comparable situations where there is no connection or relation between separate disabling illnesses and injuries. But, where, as here, the injury is to a bone, and the disease being suffered is to the bones, and the total disability results from the concurrence of the two factors, the right to compensation for the resultant condition cannot be successfully questioned under the authorities cited supra.

It follows from the foregoing that the court should have applied the rule announced in Gilbert v. E. B. Law & Son, Inc., supra, and in Seay v. Lea County Sand & Gravel Co., supra, to the effect that where a person suffers an accidental injury growing out of and in the course of his employment he is entitled to be compensated for his disability as it thereafter existed, notwithstanding the disability would not have been so great had he not been suffering from a pre-existing condition at the time of the injury.

Employer, in the middle of his answer brief, as a section denominated "cross appeal" by which he undertakes to attack the court's judgment in two respects. So far as is disclosed by the record no effort was made to comply with Rule 5 (§ 21-2-1(5), N.M.S.A.1953) providing for appeals, or Rule 7(2) (§ 21-2-1(7) (2), N.M.S.A.1953) providing for cross appeals. Accordingly, we hold that no cross appeal was ever taken, and do not consider the questions attempted to be raised.

Having concluded that the court erred in limiting claimant's recovery to 10% permanent disability, the cause is remanded with instructions to set aside the judgment and enter a new judgment granting claimant recovery for total disability. Attorney fees

in the amount of $750 are allowed claimant's attorneys for preparation and trial in this court.

It is so ordered.

CARMODY and CHAVEZ, JJ., concur.

COMPTON, C. J., and NOBLE, J., not participating.