73 P.2d 820

**HARTZELL et al. v. JACKSON et al.**

**No. 4277.**

Supreme Court of New Mexico.

Nov. 15, 1937.

E. L. Medler, of Hot Springs, for appellants.

Edward D. Tittmann, of Hillsboro, for appellees.

SADLER, Justice.

The plaintiffs (appellees) sued the defendants in the district court of Sierra county to recover judgment on promissory notes aggregating $3,500 and to foreclose a real estate mortgage securing said indebtedness. The notes so secured represented balance of the purchase price of a ranch in Sierra county sold by plaintiffs to defendants. A cash payment of $500 on the purchase price had been made at the time deed was passed to the purchaser.

The real estate involved consisted of 360 acres of patented land, plaintiffs' interest in state purchase contract No. 807, covering 240 acres of state land, and a state grazing lease on school sections 2 and 36 in adjoining townships; also some town lots in the town of Fairview—all in Sierra county, New Mexico.

. The defendants answered, entering a general denial to the claim of indebtedness asserted against them. Further answering, they set up a fraudulent misrepresentation on defendants' part in this: That at the time of said purchase it was made known to plaintiffs that defendants desired to use the land as a cattle ranch and that they falsely represented to defendants that there was then located on said section 2 in township 11 south, range 8 west, a certain well; that afterwards a government survey disclosed said well was on section 25 in township 10 south, range 8 west, owned by other parties. That if said well had been on section 2 the land in the vicinity thereof would have been suitable and useful as a cattle ranch; otherwise not. That said representation was material, was relied upon by defendants, and that but for same they would not have made the purchase.

The defendants also incorporated into their answer a cross-complaint repeating the allegations of fraud and praying rescission of the purchase and reimbursement to them of all moneys paid out in connection therewith. The plaintiffs' reply put at issue all material facts raised by the answer and cross-complaint. The reply also alleged that if ever defendant had the right of rescission it was lost through delay.

The case was tried before the court without a jury, resulting in a judgment for plaintiffs for the amount of their debt.

and a foreclosure of their mortgage. Defendants prosecute this appeal seeking to set aside said judgment and either have judgment here in their favor or direction for a new trial.

The judgment proper contains only a general finding of the issues in favor of the plaintiffs. The defendants tendered certain requested findings, some of which the trial court adopted and some of which it refused. It is on the strength of certain findings made at defendants' request that they predicate their right to judgment. They base their right to a new trial on the trial court's action in refusing certain findings.

The specially requested findings of the defendants, with action of the trial judge noted after each, are as follows:

"1st. That in the year 1930, the said plaintiffs and defendants entered into negotiations for the purchase of the property described in the complaint, and the plaintiffs represented that the same was suitable for a cattle ranch, and having a certain well thereon, and in pursuance of such negotiations a contract of sale thereof was entered into on the 5th day of August, 1930. (Found) Harry P. Owen, Judge.

"2nd. That in pursuance of such contract of sale, the said sale was consummated on or about the 26th day of September, 1931, and in the consummation thereof, the plaintiffs executed to the defendant H. C. Jackson, their warranty deed, and as a part of the purchase money to be paid in accordance with said contract, the defendants herein executed a mortgage and notes, being the mortgage and notes sued upon in the complaint. (Found) Harry P. Owen, Judge.

"3rd. That at the time of the entering into of said contract of purchase, the plaintiffs had represented that there was a well located upon Section 2, in Township 11 South, Range 8 West, being a part of the land included in said contract of purchase. (Not Found) Harry P. Owen, Judge.

"4th. That the said defendants were induced to enter into said contract upon the representation that there was a well located upon said Section 2, in Township 11 South, Range 8 West. (Not Found) Harry P. Owen, Judge.

"5th. That the said defendants purchased the said property for use as a cattle ranch, and if said well had not been upon the property, would not have purchased the property included in said contract of sale. (Not Found) Harry P. Owen, Judge.

"6th. That afterwards and in the summer of the year 1933, it was definitely determined by a government survey of lines in Township 10 S. Range 8 W., N.M.P.M. that the said well was not upon Section 2, in Township 11 South, but in fact in Section 25 in Township 10 South Rg. 8 W., N.M.P.M. (Found) Harry P. Owen, District Judge.

"7th. That the said lands involved in Sections 2 and 36 in an Institutional Lease

which was a part of said sale, are worthless as a cattle ranch or for grazing purposes without water thereon, and without water upon either of said sections do not control the range. (Not Found) Harry P. Owen, Judge.

"8th. That upon a government survey establishing the lines in said Township 10 South, and upon its being determined that the said well was not on said Section 2, the Defendants refused to further perform said contract, and notified the plaintiffs that they would make no further payments upon said purchase-money mortgage, or pay the notes securing the same, and called upon plaintiffs to make an adjustment because of such well not being upon the land. (Found) Harry P. Owen, Judge.

"9th. That at the time of entering into the contract of sale, the defendants believed that said well was upon said section 2 in Township 11 South, Range 8, and by reason of such well that they would be able to use said property as a cattle ranch, and control the surrounding range. (Found) Harry P. Owen, Judge.

"10th. That said representation that said well was upon said land was made for the purpose of inducing said defendants to purchase said property, and said purchase would not have been made but for said representation. (Not Found) Harry P. Owen, Judge.

"11th. That defendants paid in all on account of said contract the sum of $500. on account of purchase, $210. interest for the first year; $37.50 for the building of three-fourths mile of four wire strand fence, *meaintaing* lease and lease rentals upon Section 2 and 36, $117.39; installments upon contract of purchase, $105.81 and taxes upon the patented land $32.76. (Found) Harry P. Owen, Judge.

"12th. That defendants have never resided upon any part of the land involved in the contract of purchase. (Found) Harry P. Owen, Judge."

The defendants' position in reference to claimed error, if seemingly inconsistent, is nevertheless understandable. First, they insist in support of an asserted right to judgment that the court found the fraudulent representation pleaded was made. And, next, they assign error upon the trial court's refusal so to find. The apparent inconsistency in their position arises from some degree of confusion in the trial court's action on defendants' specially requested findings. When viewed as a whole, however, seeming inconsistency between findings made and those refused disappears and the judgment rendered finds adequate support in the trial court's action on the requested findings.

In order to have an intelligent understanding of the findings, the evidence upon the question of the fraudulent representation must be reviewed. Negotiations for the purchase of the ranch appear to have commenced as far back as November, 1929. Answering an inquiry from defendant H. C. Jackson, the plaintiffs in a letter dated November 29, 1929, described the ranch

generally, among other things saying: "This ranch consists of 360 acres patent land, 240 acres which we are buying from the State of N. Mex., under contract and two sections of leased land, lease to run five years, having just been renewed this fall. It is all good grazing land, some of it being on hill-side, affording protection from freezing, *has a well on it*, an adobe house, and is partially fenced. The climate is wonderful and cattle and sheep do wonderfully—but you probably know as much about that as we do." (Italics ours.)

The defendant H. C. Jackson and his son, L. M. Jackson, in the company of the plaintiff Edward Hartzell, visited the ranch prior to contracting its purchase. On such occasion, according to the testimony of the Jacksons, Hartzell represented to them that the well up a certain canyon was on the school lease, section 2, and that while he didn't know how much water it afforded, he did know it "affords plenty of water and was on his lease." The plaintiff Hartzell did not accompany the Jacksons to the actual site of the well. He remained behind while the Jacksons, father and son, alone made the trip up the canyon, about two miles in a "stripped down Ford."

·Asked about· the statements so attributed to him concerning the well, the plaintiff Hartzell testified:

"Q. You have heard the testimony of Mr. Jackson, the father in this case? A. Yes.

"Q. Did you talk to him about this well? Please tell the Court exactly .what you told Mr. Jackson at the time you were out in Fairview—when you were about to make this deal. A. I met Mr. Jackson, and we were talking about it, and he was trying to locate these leased sections, and I told him that there was supposed to be a dug well on section 2. I was told that myself. I knew nothing about the lines, and this well never had any value as a water ·well, that I knew. If he measured it and found 15 feet there, it must have been in the rainy season and run in from the top. I didn't use that well you refer—

"Mr. Medler: I object to that.

"A. Something along this line; it is a long time ago. I am a pretty old man. * * *

"Q. You did go with them, part way, up the canyon? A. Very little ways.

"Q. You told them by going on up the canyon— A. They said they were told by a party that was riding by that hole was on section 2; it wasn't a well.

"Q. You told them that it never had any value, so far as you knew? A. I never looked at it.

"Q. And anyway, you knew they went up there to look at it? A. To get the lines of the section that the well was in.

"Q. You sent them up to get the lines of Section 2, and to get those lines they would find a well? A. I told them I had been told this well was on section 2."

Thus according to defendants' testimony, an actionably false representation

regarding location and ownership of the well was made. Whereas, according to the plaintiffs' version, no representation at all was made, merely repetition of a rumor or report that the well was on section 2. The very form of Hartzell's statement suggests caution and a want of positive knowledge on his part regarding the fact. In order to be actionable or available as a ground for rescission, the representation must have been definite and specific, and not vague, loose, or general. Black on Rescission and Cancellation (2d Ed.) § 69; cf. Id. § 77, p. 210.

"If the fact of deception is accomplished the form of deceit is immaterial. In its generic sense a false representation is anything short of a warranty which produces upon the mind a false impression conducive to action. The representation must, however, be definite and specific, mere vague, general, or indefinite statements being insufficient, because they should ordinarily put the hearer upon inquiry, and there is no right to rely upon such statements." 26 C.J. 1066.

The present case in this respect is quite different from Bell v. Kyle, 27 N.M. 9, 192 P. 512, 513. There a positive misrepresentation as to location of a spring on the land purchased was found to have been made. And, as this court said: "Not a single circumstance appears from the testimony which would be calculated to put the appellee upon notice of the falsity of this representation."

That there was some uncertainty as to whether the well was located on section 2 is suggested in the record by the fact that within a year or more following the sale government surveyors ran out the lines and established its site elsewhere.

It is, however, contended by counsel for defendants that the trial court found that the fraudulent representation was made. The argument rests upon an effort to supply the words "certain well" in defendants' specially requested finding No. 1 as an antecedent for the word "said" before the word "well" in their requested finding No. 6. The court made both of these requested findings. In other words, defendants say that "said well" referred to in requested finding 6 is the "certain well" mentioned in finding 2. It is only through this ingenious argument that defendants are able to put plaintiffs in the position in the court's finding No. 1 of representing the "certain well" there mentioned as being on section 2. Requested finding 1 itself goes no further than to say the plaintiffs represented to defendants that there was a certain well on the ranch. It is our duty to endeavor to reconcile seeming inconsistency in the action on the requested findings before placing the trial court in the position of doing the absurd thing of finding that the fraudulent representation was made and that it was not made. See Guaranty Banking Corp. v. Western Ice & Bottling Co., 28 N.M. 19, 205 P. 728.

When the findings made and refused are considered in the light of the evidence and in their proper grammatical relationship to each other, we think it sufficiently appears that the trial court's reference to a "certain well" in the first finding did not relate to the supposed well on section 2. The requested finding No. 6 refers to the well in controversy supposedly located on section 2 by mentioning the section, township, and range. This well is previously mentioned in requested finding No. 3, declaring the plaintiffs to have represented there was such a well on section 2, which finding the court refused; and in requested finding No. 4, declaring the defendants were induced to make the purchase upon plaintiffs' representation that there was a well on section 2, which finding the court likewise refused.

In plaintiffs' letter to defendants, dated November 29, 1929, it had been represented that there was a well on the ranch. The evidence disclosed that there was, and a good one, which defendants admitted they had never been able "to pump dry." This well was located on the patented land a distance of about three miles from section 2. It is also to be remembered that the plaintiff Hartzell admitted stating to defendants "that there was supposed to be a dug well on section 2." That he had been told it was on section 2. Requested finding No. 6, which the court adopted, does no more than to find that the well supposedly on section 2 under plaintiff Hartzell's own testimony, but which, in reject-ing findings numbered 3 and 4, the court refused to find he had represented was there, had been finally determined by government survey not to be on said section. The supposed well mentioned in requested findings numbered 3 and 4 as located on section 2 furnishes the nearest antecedent for "said well" referred to in finding number 6. The "certain well" mentioned in finding No. 1 may reasonably be related to the well in good condition on the patented land about which there is no dispute. Thus interpreted, and this evidently is the view taken by the trial court, the claimed inconsistency disappears.

■ Defendants assign error on the court's refusal to award rescission of the contract of purchase. The claim to this relief presupposes a finding that the fraudulent representation pleaded was made. The court refused a proposed finding specifically so declaring, the equivalent of a direct finding to the contrary. Field v. Otero, 32 N.M. 338, 255 P. 785; In re Frick Book & Stationery Store, Inc., 38 N.M. 120, 28 P.2d 660.

It is also urged as error that the trial court failed to make findings upon which its judgment is based. Although no specific request for additional findings was made, Apodaca v. Lueras, 34 N.M. 121, 278 P. 197, is cited to the proposition that defendants' requested findings operated as such a request. The Apodaca Case is not in point. There, as in the case before us, so far as the judgment itself is concerned, the court placed in it only a general finding. But,

whereas, in the Apodaca Case a request for twenty specific findings were made *all of which were refused,* here twelve specific findings were requested by defendants of which the trial court adopted seven and rejected five.

In Morrow v. Martinez, 27 N.M. 354, 200 P. 1071, 1072, we stated the purpose of the statute (1929 Comp. § 105-813) imposing on the trial court the duty to make findings in cases tried by the court, involving questions of fact, as follows: "It is a right which the successful party has to have the court make such a record as will support the judgment, and it is a right the unsuccessful party has to have the court make such a record as will enable him to review the action if he so elects."

It is unimportant from which side comes the request for specific findings. The tendered findings become findings of the court when adopted as fully as if made of the court's own motion. And where, as in the instant case, the findings actually made, including the converse of a refused finding on a vital issue, are sufficient to support the judgment rendered and at the same time to afford the unsuccessful party a record adequate for the review sought, the purpose of the statute has been fulfilled.

Although Field v. Otero and the Frick Case are cited supra to the point that in a proper case we may consider as made the converse of a refused finding, we have never yet pushed this doctrine to the extent of holding that the converse of refused specifically requested findings, rejected in entirety, as in Apodaca v. Lueras, supra, will furnish compliance with the statutory duty imposed on the court trying a facts case to make and file written findings of fact and conclusions of law.

It seems obvious from the record that the trial court did not believe the fraudulent representation claimed was made. That was the vital issue. Defendants' whole defense melts in the face of the adverse finding of the court on this issue. The evidence, although conflicting, affords substantial support for the court's finding.

The judgment of the lower court will accordingly be affirmed, and

It is so ordered.

HUDSPETH, C. J., and ZINN, J., concur.

BICKLEY and BRICE, JJ., did not participate.