260 P.2d 916

**SANDERS v. CARMICHAEL ENTER-PRISES, Inc.**

No. 5630.

Supreme Court of New Mexico.

Aug. 27, 1953.

Rehearing Denied Sept. 24, 1953.

Thomas D. Schall, Albuquerque, for appellant.

Simms, Modrall, Seymour, Simms & Sperling and Fitzwilliam Sargent, Jr., all of Albuquerque, for appellee.

McGHEE, Justice.

The plaintiff, Grover Sanders, appeals from a judgment of the lower court refusing rescission and damages under a conditional sales contract whereby he agreed to purchase an ice-making machine. Joining him at the trial below was John Meeks, a party working for Sanders at the time of the negotiations hereafter discussed who was to have been a partner with Sanders in the operation of the ice plant. The signature of Meeks appears on the contracts in question, but he paid none of the consideration for them, and was joined in this action solely for completeness of parties. Also appearing below was the First National Bank of Albuquerque, Inc. As found by the trial court, its interest in the matter in controversy was solely that of collection agent for the defendant, Carmichael Enterprises Incorporated, a California corporation which was assignee of the original vendor under the conditional sales agreement, Zenith Air Conditioning Corporation, an Iowa corporation. For clarity of parties the appellant Sanders will be referred to as plaintiff, and the appellee, Carmichael Enterprises Incorporated, will be designated as defendant.

The case arose in the following manner: The plaintiff was proprietor of a grocery store and meat market in Albuquerque, New Mexico. Believing the sale of ice would increase his trade, he entered upon the series of negotiations here in dispute for the purchase of an ice-making machine, during the course of which he signed three instruments of contract. He dealt originally with one Polachek, an officer and agent of Zenith Air Conditioning Corporation, agreeing to purchase a three-ton Zenith movable ice plant for the total price of $9,850. He signed a paper termed "Purchase Contract" on August 27, 1949, under the terms of which he was to pay $500 with the order and an additional $1,500 in thirty days. The balance of the contract price was payable in 36 monthly installments of $225. This instrument provided the machine or plant was to be shipped "f. o. b. factory," (Des Moines, Iowa), and contained a warranty provision in favor of the purchaser and another provision for payment of royalties to the plaintiff in the event he were to procure other purchasers for the same type plant. No provision for interest or carrying charges appeared in this agreement.

Although the second instrument in question, the conditional sales contract between the plaintiff and Zenith Air Conditioning Corporation, hereafter called the Zenith Contract, is undated, the plaintiff testified it, too, was executed by him on August 27, 1949. Under this contract the provision the ice plant was to be shipped "f. o. b."

was not included. The "cash purchase price" was specified to be, as in the Purchase Contract, $9,850, but $1,233 was added to such figure to make the "term price" $11,083, and monthly payments were set at $250 each month for 35 months and a final payment of $333. This contract contained a provision, among others, that upon default by the purchaser the seller could take possession of the property and retain, as liquidated damages for such default, etc., all payments made by the purchaser.

The third contract before us was entered into by the plaintiff and the defendant, Carmichael Enterprises Incorporated. It was executed on a form provided by the First National Bank of Albuquerque, as the defendant was endeavoring to discount the contract with the bank and it requested or required the contract to be executed on their form. The discount not materializing, however, the sole interest of the bank was it was agent for collection for the defendant.

This third contract, referred to as the "Carmichael Contract", differed from the Zenith Contract in the following particulars: It provided a "time sales charge" of $1,413, as opposed to that contained in the Zenith Contract of $1,233; the unpaid balance was to be paid in 36 equal monthly installments of $257.31, the deferred payments to bear interest from maturity at the highest lawful rate. Among others was a provision respecting forfeiture by the purchaser of any amount paid the seller in the event of default by the purchaser under the contract. Like the Zenith Contract, the Carmichael Contract was silent on the question of freight charges.

The plaintiff paid $2,000 under the contract and prepared a place in which to house and operate the ice plant at a cost, as he testified, of $2,000. The plant was shipped to Albuquerque on September 21, 1949, and the plaintiff was notified of its arrival, but did not take delivery on it because he was unable to pay the freight charges. The plant remained in storage until the time this suit was instituted, some two years, when the plaintiff sued out a writ of attachment for it and it was subsequently released on bond to the defendant.

The plaintiff's theory of the case is contained in this statement from his brief-in-chief:

" * * * that all of the writings came into being as a continuous transaction; that this transaction was conducted from beginning to end by Polachek; that Polachek throughout the transaction made certain false and fraudulent representations to Sanders as to the terms of the various writings, and that Sanders relied upon these representations and signed the writings without reading them."

In support of this theory he testified Polachek represented to him substantially the

following: That he would accept $500 down on the ice-making machine, deliver and install it; when it was operating the plaintiff was to pay $1,500, and thirty days thereafter begin making payments of $225 per month; that the $2,000 in cash and the monthly payments were the total obligation of plaintiff, and he was not to be held accountable for freight, delivery and installation charges. He further testified he had little education and was unable to see well at close range; that he "ran through them (the papers) very briefly," and signed the Purchase Contract and the Zenith Contract in reliance on the statement of Polachek that they reflected the terms of their understanding. With respect to the Carmichael Contract, the plaintiff asserted that on September 3, 1949, Polachek came to him and said if he would pay the sum of $1,500 at that time and sign another paper, the machine would be delivered in three days; that he gave Polachek a check for such sum and signed the Carmichael Contract without reading it, believing it had to do only with delivery of the ice plant; that the machine did not arrive when Polachek had represented it would, and some time later he was advised it had arrived and would be installed shortly; another delay intervened and then the representative of the defendant contacted him stating he would have to pay the freight charges. A letter to the defendant was introduced in evidence wherein the plaintiff offered to pay the freight charges if they could be handled in installments; he never received a response to this letter. After another lengthy delay, this action was finally brought, as above stated.

The trial court found the issues generally in favor of the defendant, and though requested so to do, made no finding respecting the issue of fraud contended for by plaintiff. Two of its findings are set out in full below to further portray the ruling made, to-wit:

"4. * * * the defendant, Carmichael Enterprises, Inc., purchased upon discount the conditional sales contract from Zenith Air Conditioning Corporation and that on or about September 23, 1949, the plaintiffs entered into another Conditional Sales Contract on the form prepared and prescribed by the First National Bank in Albuquerque, which said conditional sales contract was and remained the final contract document as between the plaintiffs and Carmichael Enterprises, Inc.;

"6. That pursuant to the original sales agreement between plaintiff and Zenith Air Conditioning Corporation, the ice-making machine which was the subject of said contract was shipped from Des Moines, Iowa, to Albuquerque, New Mexico, and plaintiffs were duly notified of its arrival in Albuquerque; That in addition, the manufacturer of said machine sent to Albuquerque an engineer whose duty it was to supervise the installation and initial operation of said

machine; that the plaintiffs herein refused to accept delivery of said machine and failed and refused to pay the freight costs thereof, notwithstanding a provision in the initial sales contract to the effect that said machine was sold f. o. b. Des Moines, Iowa; that said machine remained in storage in Albuquerque for more than two years following its arrival and that the plaintiffs continued to refuse to accept said machine or allow its installation and further refused to comply with the provisions of the conditional sales contract in effect between plaintiffs and Carmichael Enterprises, Inc."

In a letter addressed to counsel for the parties, the trial judge stated:

"The plaintiff signed the contracts in question and thereby bound himself by their terms. He should have read the contracts or have had them read to him before he signed them."

In appealing from the adverse judgment the plaintiff makes four points. The first broadly assigns it was error for the trial court to adopt the defendant's theory of the case, and the remaining three argue that by implication in the letter quoted above the trial court did adopt as true the plaintiff's testimony about the fraudulent representations of Polachek, but ruled the plaintiff was negligent in failing to read or have read to him the contracts, and then contends plaintiff was not negligent; that he is entitled to damages by way of rescission; and that the defendant, as assignee of Zenith Air Conditioning Corporation, is bound by the equities existing between plaintiff and the orignal vendor. It is further urged Polachek was the agent of the defendant inasmuch as it had entered into a contract with Zenith Air Conditioning Corporation on June 30, 1949, providing the defendant would be exclusive distributor for such ice-making units in a territory including Albuquerque, a date prior to the transactions between the plaintiff and Polachek.

While it is true the findings of the lower court do not specifically find there was no fraud practiced on the plaintiff by Polachek, still the finding of the issues in favor of the defendant, and the ruling the contracts were valid is tantamount to such finding. Only the plaintiff, and to some extent, his employee, Meeks, testified regarding the dealings with Polachek and the plaintiff's limited education and ability to read. It was the province of the trial judge to either accept or reject such testimony as true, and by the findings made and judgment entered, he has clearly rejected it. While the letters, remarks, or opinion of a trial judge may be looked to in order to clarify ambiguities or inconsistencies in the findings made, in the absence of some such uncertainty concerning

them, the formal findings must prevail. Ferret v. Ferret, 1951, 55 N.M. 565, 237 P.2d ·594; Woodson v. Raynolds, 1938, 42 N.M. 161, 76 P.2d 34. The findings before us are clear and precise. It is unnecessary, therefore, to discuss further the points on this appeal touching the question of fraud.

 The remaining point raised, that the trial court erred in adopting defendant's theory of the case, contains argument it was error for the trial court to rule the Carmichael Contract was the "final contract document as between the plaintiffs and Carmichael Enterprises, Inc.," and then excerpt from the initial Purchase Contract the provision respecting freight charges and enforce it against the plaintiff. In this we are in sympathy with the plaintiff, and entertain the view the trial court might well have found the Carmichael Contract was executed as a substitute contract intended to be in lieu of the already existing contracts. The point, however, is raised here for the first time, and the plaintiff having prosecuted this action throughout upon the theory of fraud, and never having raised the issue or sought a ruling of the court thereon, may not avail himself of it here. Hendricks v. Hendricks, 1950, 55 N.M. 51, 226 P.2d 464; Haden v. Eaves, 1950, 55 N.M. 40, 226 P.2d 457; N. H. Ranch Co. v. Gann, 1938, 42 N.M. 530, 82 P.2d 632; Horton v. Atchison T. & S. F. R. Co., 1929, 34 N.M. 594, 288 P. 1065.

The judgment of the lower court must be affirmed.

It is so ordered.

COMPTON and LUJAN, JJ., concur.

SADLER, C. J., absent from State, and SEYMOUR, J., not participating.