711 P.2d 874

**Bert LEDBETTER and Joann Ledbetter, Plaintiffs-Appellees,**

v.

**Clifford R. WEBB and Barbara E. Webb, Defendants-Appellants.**

**No. 15181.**

Supreme Court of New Mexico.

Dec. 9, 1985.

J. Edward Hollington, Albuquerque, for plaintiffs-appellees.

Rondolyn R. O'Brien, Albuquerque, for defendants-appellants.

## OPINION

WALTERS, Justice.

This is a breach of contract action. The trial court found generally for plaintiffs

(the Ledbetters) and awarded them compensatory and special damages on the contract, together with compensatory damages for the Webbs' conversion of plaintiffs' video vending machine. As setoffs against those damages, the trial court awarded compensatory, consequential and punitive damages on the Webbs' counterclaim for fraudulent misrepresentation. The court applied principles of comparative fault in calculating the Webbs' consequential damages.

The Webbs appeal and the Ledbetters cross-appeal. We affirm.

**FACTS**

Defendant Clifford Webb became acquainted with plaintiffs Bert and Joann Ledbetter when he placed two of his video vending machines in their ice cream business, Geejo's Sundaes. In late June or early July of 1981, Mr. Webb learned that Geejo's was for sale and offered to buy the business. There followed approximately two weeks of negotiations, at the end of which time the parties executed a purchase and sale agreement. The Ledbetters were eager to consummate the deal as quickly as possible because the business was set for sale at auction in the near future. They also wanted to give the Webbs the benefit of owning the business during its peak summer season.

Under the terms of the agreement, Ledbetters conveyed the business to the Webbs in return for a video vending machine as a down payment, a promissory note for $14,250 as the balance of the purchase price, and a security interest in the equipment. The video vending machine was to remain on the premises and the proceeds were to be shared by the Ledbetters and Webbs.

The sale, together with an assignment of the lease on the building to the Webbs, was completed on July 18, 1981. Thereafter, the Ledbetters spent approximately two weeks working with the Webbs and showing them how to maintain the equipment and run the business.

In the early part of September, 1981, the Webbs noticed a foul odor emanating from one of the ice cream machines. Although they undertook extensive cleaning, they were unable to rid the machine of the odor. Business and profits fell markedly during the 2–3 weeks following the onset of the odor. On or about September 22, 1981, and without notice to the Ledbetters, the Webbs closed the business. The Ledbetters learned of the closing when they inadvertently came upon Webb as he was removing the video machine from the premises.

Defendants Webbs defaulted on the promissory note payment due October 1st and made no payments thereafter. They also defaulted on the rent due September 15th under the lease.

On October 5th, the landlord refused the Ledbetters' tender of one month's rent, padlocked the premises and placed a lien on the business equipment. The Ledbetters thereupon obtained a court order and entered the business to repossess and sell the equipment. (They were ultimately awarded the net proceeds from that sale in a separate suit against the landlord.) The Ledbetters then filed against the Webbs for breach of contract; the Webbs counterclaimed for fraudulent misrepresentation and negligent misrepresentation. Other counterclaims by the Webbs are not at issue in this appeal.

The court's unchallenged Findings of Fact and Conclusion of Law are as follows:

1. Plaintiffs sold an ice cream business to the defendants.

2. Plaintiffs represented that the [ice cream] machines in the business were in good condition.

7. Defendants defaulted in payments and moved out of the premises and thereby failed to carry out the agreement.

8. Plaintiffs acted reasonably in an attempt to minimize damages and resold the property in a reasonably commercial manner.

10. Defendants converted Plaintiffs' [video vending] machine and damaged the Plaintiffs $2,750.00.

11. Defendants defaulted on the note and owe $13,884.00 thereon.

12. Plaintiffs were damaged $570.00 for a lawyer fee, $500.00 of their own lawyer fee in bringing suit to get out of lease [which had been assigned to Defendants].

\*　\*　\*　\*　\*　\*

2. Defendants breached the contract.

The challenged findings, and Conclusion No. 3, read:

3. The [ice cream] machines were not in good condition. Plaintiffs were negligent in representing the machines were in good condition. Defendants relied on the misrepresentations.

4. Defendants were negligent in the maintenance of the machines.

5. As a result of the negligence of Plaintiffs and Defendants, the machines failed and caused damage to Defendants in the amount of $800.00. Fault was 75% Plaintiffs, and 25% Defendants.

6. Plaintiffs made false representations in the sale, but Defendants did not rely thereon, except that Defendants relied on the representation regarding condition of the machine, see paragraph 13.

9. Plaintiffs made false representations, knowing they were false, in an effort to get Defendants to enter into the agreement.

13. Defendants are entitled to a $2,722 credit because the machine was represented as good condition and it wasn't. It was worth $2,722 less than represented, and it was falsely represented by Plaintiffs knowing the representation was false. Defendants relied on the representations.

\*　\*　\*　\*　\*　\*

3. Plaintiffs are entitled to judgment in the amount of $9,900 plus 10% additional as a lawyer fee for a total of $10,890, plus costs.

The issues raised by the Webbs on this appeal are:

(1) Whether the Webbs are entitled to recission, in view of the court's findings of all elements of fraud;

(2) Whether the trial court erred in applying comparative negligence principles to the Webbs' consequential damages;

(3) Whether the trial court's finding of no reliance on the financial misrepresentations made by the Ledbetters is supported by substantial evidence.

The Ledbetters' cross-appeal frames these issues:

(4) Whether the trial court's finding that the Ledbetters fraudulently misrepresented the condition of the ice cream machines is supported by substantial evidence;

(5) Whether the trial court erred in calculating the amount of the judgment;

(6) Whether the trial court erred in refusing pre-judgment interest to the Plaintiffs.

Because some of the issues are interrelated, we do not necessarily discuss them in the order presented by the parties.

## I. Remedy of Recission

 The Webbs claim error in the court's refusal to find that the Ledbetters' misstatements regarding the condition of the machines were material, entitling the Webbs to rescind the contract. Misrepresentation of a material fact, even if innocently made, will entitle the party who has justifiably relied thereon to rescind the contract. *Prudential Insurance Company of America v. Anaya*, 78 N.M. 101, 428 P.2d 640 (1967). Ordinarily the question of materiality is one of fact. *Modisette v. Foundation Reserve Insurance Co.*, 77 N.M. 661, 427 P.2d 21 (1967).

 It is unnecessary to decide whether the evidence below supports the court's denial of the requested findings. Rescission is an equitable remedy which seeks to restore the status quo ante. *See Prudential Insurance*, 78 N.M. at 106, 428

P.2d at 645; *Ham v. Hart,* 58 N.M. 550, 273 P.2d 748 (1954), *overruled on other grounds, Hockett v. Winks,* 82 N.M. 597, 485 P.2d 353 (1971). The defrauded party must return or offer to return that which has been received under the contract as a condition precedent to maintaining a suit for rescission. *Prudential Insurance,* 78 N.M. at 106, 428 P.2d at 645.

Although substantial rather than strict compliance will satisfy the rule, the record in this case is devoid of evidence of any effort at compliance by the Webbs. *See Robison v. Katz,* 94 N.M. 314, 610 P.2d 201 (Ct.App.), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980); *Gottwald v. Weeks,* 41 N.M. 18, 63 P.2d 537 (1936). The uncontroverted testimony is that: (1) the Webbs closed the business without prior notice to the Ledbetters; (2) the Ledbetters learned of the Webbs' intention to quit the business only when they accidentally discovered the Webbs in the process of removing equipment from the premises; (3) the Webbs defaulted on the business lease which had been assigned to them; (4) because of the Webbs' abandonment, the landlord subsequently padlocked the premises, forcing plaintiffs to litigate their right to enter and repossess the equipment in which they held a security interest; and (5) the equipment of the business was subsequently repossessed and sold pursuant to the security agreement and in a commercially reasonable manner. Defendants' acts made it impossible to restore the status quo ante.

■ The above facts, together with the trial court's unchallenged finding that the Webbs converted the Ledbetters' video vending machine, deprive the Webbs of the "clean hands" necessary to seek the equitable remedy of rescission. *Cf. Ortiz v. Lane,* 92 N.M. 513, 590 P.2d 1168 (Ct.App. 1979); *Wyrsch v. Milke,* 92 N.M. 217, 585 P.2d 1098 (Ct.App.1978).

## II. Fraudulent Misrepresentation Regarding the Machine

The Ledbetters challenge the court's findings to the effect that the Ledbetters fraudulently misrepresented the condition of the ice cream machines to the Webbs, and they challenge the trial court's refusal to adopt their requested findings No. 8–13 and conclusions No. 1 and 2.

So far as we can tell, the court did in fact adopt—at least in substance—the Ledbetters' conclusions of law No. 1 and 2 relating to the court's jurisdiction and the existence of a contract (evidenced by a promissory note) between the parties. The Ledbetters' requested findings No. 8–13 refer merely to evidentiary facts, some of which are uncontested and others of which are inconsistent with the ultimate fact of fraud as found by the court. *Cf. Goodwin v. Travis,* 58 N.M. 465, 272 P.2d 672 (1954) (court has no obligation to find all relevant facts but only such ultimate facts as necessary to determine issues in case). There was substantial evidence to support the court's finding of fraud regarding the ice cream machine.

The Ledbetters, admitting that they told the Webbs that the machine was in good working order, nevertheless argue that the Webbs did not prove by clear and convincing evidence that the machine was defective and that the Ledbetters knew it was defective at the time of the sale.

■ Where a claim must be proved by clear and convincing evidence it is for the finder of facts, and not the appellate courts, to weigh conflicting evidence and decide where the truth lies. *Duke City Lumber Company, Inc. v. Terrel,* 88 N.M. 299, 540 P.2d 229 (1975).

> The function of the appellate court is to view the evidence in the light most favorable to the prevailing party, and to determine therefrom *if the mind of the factfinder could properly have reached an abiding conviction as to the truth of the* * * * *facts found.*

*Id.* at 301, 540 P.2d at 231. (Our emphasis.)

■ The facts and circumstances surrounding a transaction may provide clear and convincing evidence of fraudulent intent. *See Sauter v. St. Michael's College,* 70 N.M. 380, 374 P.2d 134 (1962). Consid-

ering that there was evidence of a malodorous smell a month after sale; that dried, mildewed and caked ice cream on the motor, condensor and elsewhere took two persons 20 hours to clean; that a rag was found tied around leaking copper tubing and the catch pans had rusted through, it was well within the province of the factfinder to reach an abiding conviction that the Ledbetters knew that the machine was latently defective when they told the Webbs that it was in good working order.

■ The Ledbetters argue, however, that the Webbs had an opportunity to investigate the condition of the machine firsthand, thus implying that the Webbs did not justifiably rely on their representations. That contention is without merit. The Webbs had never before operated an ice cream business or worked with ice cream machines. They were entitled to rely on the Ledbetters' representations regarding the condition of the machines. *Cf. Hammaker v. Lowe*, 57 N.M. 585, 261 P.2d 129 (1953) (vendees without experience in housing construction or knowledge of building materials entitled to rely on agent's representations that houses would be delivered as represented). The finding of reliance upon the sellers' misrepresentations is supported by substantial evidence.

## III. Application of Comparative Negligence

■ We are faced with the conflict between the trial court's findings that the Ledbetters *negligently* misrepresented the condition of the machine and that they falsely represented the machine, *knowing* the representation to be false. In the case of uncertain, doubtful or ambiguous findings, an appellate court is bound to indulge every presumption to sustain the judgment. *Guaranty Banking Corporation v. Western Ice & Bottling Co.*, 28 N.M. 19, 205 P. 728 (1922). Seeming inconsistencies are to be reconciled by the reviewing court, if possible, to avoid what may be challenged as contradictions. *City of Raton v. Vermejo Conservancy Dist.*, 101 N.M. 95, 678

P.2d 1170, (1984); *see also Hartzell v. Jackson*, 41 N.M. 700, 73 P.2d 820 (1937).

"Findings are not to be construed with the strictness of special pleadings. It is sufficient if * * * we can see enough upon a fair construction to justify the judgment of the court, notwithstanding their want of precision and the occasional intermixture of matters of fact and conclusions of law."

*Hoskins v. Albuquerque Bus Company*, 72 N.M. 217, 224, 382 P.2d 700, 705 (1963) (quoting *Fraser v. Bank*, 18 N.M. 340, 351, 137 P. 592, 594 (1913) ).

The finding of intentional fraudulent misrepresentation has been upheld as supported by substantial evidence. The judgment, which includes an award of punitive damages, is inconsistent with a finding of negligence. In construing the findings to support the judgment, we conclude that the finding of negligent misrepresentation concerning the machines is instead an erroneous conclusion of law which implies that negligent misrepresentation is somehow a "lesser included tort" within the greater tort of fraud. *See Goodwin v. Travis*, 58 N.M. 465, 272 P.2d 672 (1954) ("ultimate facts" are often indistinguishable from "conclusions of law").

■ Negligent misrepresentation is not, of course, a "lesser included" cause of action within a claim for deceit or fraud. *See Sims v. Craig*, 96 N.M. 33, 627 P.2d 875 (1981) (negligent misrepresentation differs from tort of deceit in that basis for liability in latter is intent to mislead); *Maxey v. Quintana*, 84 N.M. 38, 499 P.2d 356 (Ct. App.), *cert. denied sub nom Jack Dailey Realty, Inc. v. Maxey*, 84 N.M. 37, 499 P.2d 355 (1972) (negligent misrepresentation is an action separate from tort of fraud or deceit); *State ex rel. Conley Lott Nichols Machinery Co. v. Safeco Insurance Company of America*, 100 N.M. 440, 671 P.2d 1151 (Ct.App.), *cert. denied*, 100 N.M. 327, 670 P.2d 581 (1983) (negligent misrepresentation and fraudulent misrepresentation differ as to scienter and burden of proof).

■ An appellate court is not bound by a trial court's erroneous conclusion of

law. *City of Raton v. Vermejo Conservancy Dist.*, 101 N.M. 95, 678 P.2d 1170 (1984); *Sachs v. Board of Trustees, Etc.*, 89 N.M. 712, 557 P.2d 209 (1976). We hold therefore, that where plaintiffs' conduct is found to be intentionally fraudulent or misleading and that finding is supported by substantial evidence, it is error to conclude that the same conduct also amounts to negligent misrepresentation.

■ However, the trial court's application of comparative fault percentages to the Webbs' consequential damages, in Finding No. 5, deserves comment. An appellate court may look to the remarks or opinions of the trial judge for clarification of ambiguities, *Sanders v. Carmichael Enterprises, Inc.*, 57 N.M. 554, 260 P.2d 916 (1953), so long as such remarks or opinions are not made the basis for error on appeal. *Balboa Construction Co., Inc. v. Golden*, 97 N.M. 299, 639 P.2d 586 (Ct.App.1981).

In his comments at the close of the case, Judge Love found that the Webbs had suffered $800 in consequential damages due to decreased sales after the machine malfunctioned. He said, "I think that should be split, $200 to the defendants and $600 to the plaintiffs on the basis of comparative fault. I think the defendants had an obligation to check these things and that they hadn't been kept right up to snuff, but the defendants didn't watch them like they should have. Otherwise, this would not have caked up to the extent that it did. They must have known that that ice cream was going somewhere * * * * [T]hey knew there was leakage out the front * * * * and so they must have known that something was going on there."

Judge Love's remarks concerning consequential damages indicate the award was based on the Webbs' failure to heed early warning signs that the machine was malfunctioning and to effect earlier repairs and/or maintenance as were necessary to prevent the damage to the machine from becoming worse, *i.e.*, to *mitigate*. Finding No. 5 which apportions liability for $200 worth of damage to defendants is essentially a finding that the Webbs had breached

their duty to mitigate damages and thus unnecessarily had increased their consequential damages by $200.

We do not disturb the trial court's finding that, as a result of the Ledbetters' misrepresentations, the Webbs suffered consequential damages. We simply hold that the court's legal conclusion that $200 of those damages resulted from the Webbs' "comparative negligence" should have stated, instead, that the $200 assessed against the Webbs resulted from their failure to mitigate.

Plaintiffs argue that the Webbs were not entitled to any consequential damages. That argument rests on their insistence that they did not misrepresent the condition of the machine and that the malfunction was caused solely by the Webbs' negligent maintenance. As we have noted, there is substantial evidence to support the finding that the Ledbetters knew the machine was defective at the time of the sale.

## IV. Defendants' Reliance on Plaintiffs' Representations as to Profitability

■ The Webbs challenge the trial court's finding that they did not rely on the Ledbetters' other misrepresentations. There was testimony that Clifford Webb had asked Burt Ledbetter for financial statements because he was primarily concerned with the net profits of the business. He was given an income statement for 1980 and a statement of gross sales for the first six months of 1981. The 1980 income statement omitted or understated certain expenses such as depreciation, interest, car expense and wages, which appeared in the Ledbetters' tax return. When asked whether he had requested a copy of the Ledbetters' tax return, Mr. Webb replied, "Income tax returns to me were essentially irrelevant. What I wanted to know was what the bottom line was after operating expense." His testimony that, had he been shown a full income statement rather than just gross sales for the first six months of 1981, he would not have purchased the business, was for the trial court to weigh. Webb's experience as a vice-president of a

loan company which had included researching the background of property for possible financing, taken *together with his* testimony that he had decided to spend more on advertising than had the Ledbetters, could have raised such doubt in the mind of a reasonable factfinder that evidence of reliance on Ledbetter's profitability representations was not clear and convincing.

 The Webbs rest their argument, *i.e.,* that failure to find reliance was a result of erroneous reasoning, on some of the court's verbal comments. Those comments, although they may be used to clarify a finding of fact, may not provide the basis for reversing that finding. *See Balboa Construction Co.* Moreover, the trial judge concluded his comments concerning reliance by saying, " * * * and *generally* based on [*Mr. Webb's*] *testimony,* I don't feel that there was reliance."

## V. Calculation of Judgment

 In a judgment that amounted to a verbatim reiteration of its conclusions of law, the trial court awarded the Ledbetters net damages of $9,900. To this sum it added 10% ($990) for attorneys' fees pursuant to the terms of the promissory note. The Ledbetters accurately point out that one cannot, by using the amounts assigned to the various items of damages in the findings of fact, reconcile the net damage award of $9,900. They stress the following: (1) the judgment is a reiteration of the court's conclusions; (2) the conclusions are inconsistent with the findings of fact; (3) where conclusions conflict with findings, the findings control; therefore, the appellate court should revise the amount of the judgment. *See Sachs v. Board of Trustees, Etc.,* 89 N.M. 712, 557 P.2d 209 (1976).

It is questionable whether an arithmetical calculation is, in fact, a "conclusion of law." Without belaboring that point, however, we construe the findings liberally to sustain the judgment if possible, and in so doing, we look to the trial court's verbal calculations for clarification. The record reveals that the amounts due the Ledbetters were decided as follows:

| | |
|---|---:|
| Balance owed by Webbs on promissory note | $13,884 |
| Value of video machine converted by Webbs | 2,750 |
| Attorneys' fees for which Ledbetters were required to indemnify third party defendants in prior litigation with landlord | 570 |
| Ledbetters' own attorneys' fees in prior litigation with landlord | 500 |
| One month's rent awarded to landlord in prior litigation | 518 |
| Subtotal | $18,222 |
| Net proceeds from sale of repossessed equipment | $-2,606 |
| Punitive damages awarded to Webbs | -2,400 |
| Compensatory damages to Webbs for misrepresentation of the condition of the machine | -2,722 |
| Consequential damages to Webbs | -600 |
| Subtotal | $-8,328 |
| Net damages to Ledbetters | $ 9,894 |

Although there appears to be a miscalculation of $6, the judgment awarding net damages of $9,900 is not inconsistent with the findings of fact when the findings are construed liberally and clarified by the record and the trial judge's oral decision. Precise mathematical computation is not required. *Nosker v. Western Farm Bureau Mutual Insurance Co.,* 81 N.M. 300, 466 P.2d 866 (1970).

## VI. Award of Pre-Judgment Interest

 The Ledbetters protest denial of interest on the balance due on the promissory note, at the rate specified therein, from the date of default. Normally, where a defendant has breached a contract to pay a definite sum of money, interest is allowed on the amount of the debt from the time performance was due. *Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980). Nonetheless, such interest is not to be awarded arbitrarily without regard for the equities of each particular situation. *Id.* at 188, 619 P.2d at 1232. We quote from the case of

*Newcum v. Lawson,* 100 N.M. 512, 672 P.2d 1143 (Ct.App.1983), which is directly on point:

> In disallowing interest on the note, the trial court applied equitable considerations. The defendants [here plaintiffs] should not receive interest on a note that they did not take in good faith. [They] should not receive interest on the unpaid portion of a purchase price agreed to by [parties] who had been intentionally deceived by [them]. The trial court could properly disallow interest on this basis.

*Id.* at 514, 672 P.2d at 1145.

For the reasons stated, the judgment of the trial court is AFFIRMED.

FEDERICI, C.J., and SOSA, Senior Justice, concur.

RIORDAN, J. (not participating).

STOWERS, J. (concurring in part, dissenting in part.)

STOWERS, Justice, concurring in part, dissenting in part.

I concur in Parts I through V of this opinion. I write separately, however, in order to make very clear that the trial court's interjection of comparative negligence principles into the counterclaim for fraudulent misrepresentation was erroneous. I disagree with the majority's application of equitable principles to the plaintiffs' claim for prejudgment interest, and with its disposition of that issue. Accordingly, I dissent from Part VI of the majority opinion.

**Assessment of Damages for Fraudulent Misrepresentation.**

In this case, the Ledbetters fraudulently misrepresented to the Webbs the condition of the ice cream machines. Relying on these representations, the Webbs purchased the machines and began to use them in the business. The trial court awarded the Webbs the difference between the value of the machines as represented and their actual value. The trial court awarded the Webbs additional consequen-

tial damages for the proven lost revenues caused by the malfunctioning machinery.

The trial court, however, also found that some of the business losses were caused by the Webbs' negligence in maintaining the machines, that is, by their failure to exercise due care subsequent to the Ledbetters' tortious acts of misrepresentation. It is fundamental law that "[u]nder the doctrine of avoidable consequences a person injured by the tort of another is not entitled to damages which he could have avoided by the use of due care after the commission of the tort." *Rutledge v. Johnson,* 81 N.M. 217, 220, 465 P.2d 274, 277 (1970). Damages caused by the injured party's negligent acts cannot be recovered. *See* NMSA 1978, UJI Civ. 18.11, 18.20 (Repl.Pamp. 1980). Mitigation of damages raises questions of causation, not of comparative fault; therefore, the trial court acted improperly in stating its analysis in terms of comparative fault.

Finally, it should be noted that the principle of avoidable consequences or mitigation of damages is applicable to torts both negligent and intentional. The Court today does not reach the question of whether the comparative negligence system we adopted in *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981) governs the assessment of damages in actions for fraudulent misrepresentation or other intentional torts.

**Denial of Prejudgment Interest.**

The Ledbetters requested the trial court to award them the balance due on the promissory note plus 13% interest, as provided in the note and in the purchase agreement. The trial court apparently was satisfied that a contract existed between the parties, for it found that the Webbs had breached the contract and owed the balance due on the note. Although it made no findings regarding the interest clause of the note, which the parties did not contest, the trial court denied the Ledbetters prejudgment interest.

I believe that the trial court's treatment of interest was erroneous, and that the majority's affirmance of the trial court's decision on equitable grounds misinterprets

the law of prejudgment interest in New Mexico. The first case cited by the majority, *Shaeffer v. Kelton*, 95 N.M. 182, 619 P.2d 1226 (1980), followed the rule of the Restatement of Contracts § 337 (1932), which applies to claims for prejudgment interest at the statutory rate in contract cases "[i]f the parties have not by contract determined otherwise ..." *Id.*, 95 N.M. at 187, 619 P.2d at 1231. Obviously the case before us falls outside that rule.

Nor is *Newcum v. Lawson*, 100 N.M. 512, 672 P.2d 1143 (Ct.App.1983), directly on point, as the majority state. The *Newcum* trial court found for the purchasers on their fraudulent misrepresentation claims, and *against* the sellers on their promissory note claims. Having refused to enforce the promissory note, the court was guided in its treatment of prejudgment interest by the Restatement of Contracts § 337. *Id.* at 514, 672 P.2d at 1145.

Here, unlike *Newcum,* the trial court upheld the promissory note agreement between the Ledbetters and the Webbs. Where a contract provides for interest payments, as does this one, prejudgment interest is recoverable in a suit upon the contract as a matter of right, as an element of compensatory damages. *Allsop Lumber Co. v. Continental Casualty Co.*, 73 N.M. 64, 79, 385 P.2d 625, 635 (1963); *see also American Institute of Marketing Systems, Inc. v. Keith*, 82 N.M. 699, 703, 487 P.2d 127, 131 (1971); *State Trust and Savings Bank v. Hermosa Land and Cattle Co.*, 30 N.M. 566, 594–96, 240 P. 469, 480–82 (1925). While the Restatement rule allows awards of prejudgment interest to rest upon equitable considerations in certain situations where the parties have not determined their interest liabilities, it is not the province of the courts to alter or amend the unambiguous terms of a lawful contract. *Smith v. Price's Creameries, Division of Creamland Dairies, Inc.*, 98 N.M. 541, 545, 650 P.2d 825, 829 (1982).

For the foregoing reasons, I dissent from the majority's disposition of the prejudgment interest issue, and I concur in the remainder of its opinion.