NATIVIDAD CHARBONIER WIDOW OF BLANCO, Plaintiff and Appellant, v. METROPOLITAN BUS AUTHORITY, INC., Defendant and Appellee.

No. 324.     Decided December 31, 1963.

---

*Norman A. Pardo* for appellant. *Alberto Picó* and *Francisco A. Rosa Silva* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In certain fields of extracontractual liability it is frequently impossible to formulate precise rules for determining with the accuracy of an electronic mechanism the propriety or impropriety of a claim. In view of these circumstances, the joker comes into play that each case must be decided on its particular and specific facts. Which is an euphemistic way of warning that it is necessary to be very careful in the presentation of the evidence in order that the trier may have available all the indispensable elements for forming the most adequate judgment.

One of the fields to which we refer is that relative to the liability of a public carrier for violent starting or lurching in starting or sudden stopping. We must part from the generalization so common now that it has become a slogan that a carrier is not an insurer, which formula properly

evaluated amounts only to ascertaining that it is not absolutely liable or is without fault. Nonetheless, he is required to exercise the highest degree of care and prudence. As to the specific fact under consideration, it will suffice to point out that there is no steadfast rule for determining when there is liability for a starting or lurching, except that (a) they are admitted as common and usual incidents of modern transportation which every passenger should know and anticipate; (b) except in the case of violent, unusual or unexpected startings, lurchings or stoppings; and (c) even if that is not the case, the passenger is one who by his appearance and physical conditions deserves special care or treatment. Another factor to be considered is the place where the accident occurs, that is, whether or not the aggrieved party is in a secure place, "is safely", as we stated in *Callander* v. *White Star Bus Line, Inc.*, 57 P.R.R. 164 (1940), which means that after a person has entered the door of the vehicle the driver is not under the duty to maintain it at a standstill until the passenger is seated. See, in general, *Hoskins* v. *Albuquerque Bus Company*, 382 P.2d 700, 706 (N.M. 1963); *Cincinnati, Newport & Covington Transp. Co.* v. *Fischer*, 357 S.W.2d 870 (Ky. 1962); *Sunthimer* v. *Baltimore Transit Company*, 141 A.2d 527 (Md. 1958); Annotation, *Motor carriers' liability for injury to passenger by sudden stopping, starting or lurching of conveyance*, 57 A.L.R.2d 5 (1958); 4 Blashfield, Cyclopedia of Automobile Law and Practice, § 2156.

■ In the findings of fact of the trial court in the present case it is said that: "According to plaintiff's testimony, the only one given on how the accident happened, it occurred as follows: when she got on the bus and deposited the fare in the corresponding receptacle, 'the chauffeur started suddenly' and she fell to the floor. According to her admission on cross-examination, she 'was not holding onto anything' when she fell. This is the only explanation given by plaintiff and that is, essentially, the entire evidence on the occurrence of the

accident which gave rise to this suit." Indeed, plaintiff's lengthy testimony contains only two isolated passages which present her version of the facts. On direct examination she asserted that "the chauffeur started suddenly and I was thrown off balance." The jerk or starting is not described; it is simply labelled as sudden. However, the only scope of this statement is to point out that it was unexpected for her, since as she further stated on cross-examination, "I deposited the coin and the chauffeur started suddenly and I fell [to the floor . . .], and since *I did not expect that jerk. . . .*" We must resort to the driver's testimony—not controverted on this point—in order to determine that the jerk or starting was normal and usual: "I proceeded as usual . . . ," the bus "left the lane smoothly." Under such circumstances, it is necessary to conclude that the trial court did not err. Since *Callander* v. *White Star Bus Line, Inc., supra*, we have held that the driver of a bus is not liable for *slight* jerks or jolts when the passenger is safely inside the vehicle. There is no liability when the jolt or jerk is normal.

The reasoning of this rule is easily discernible in the exigencies of modern transportation. Should we hold that the driver is negligent even in cases of slight jolts, the only way of escaping liability would be to wait until each and all of the passengers are seated before proceeding. The fact that the greatest public carrier in Puerto Rico, the Metropolitan Bus Authority, transported 65,214,129 passengers in the period of 1961–62, 63,001,006 in 1960–61, and 60,342,052 in 1959–60, is the best index that such a steadfast rule cannot be adopted.

The judgment rendered by the Superior Court, San Juan Part, on April 4, 1960, will be affirmed.