NATIVIDAD CHARBONIER VDA. DE BLANCO, demandante y recurrente, *v.* COMPAÑÍA METROPOLITANA DE AUTOBUSES, INC., demandada y recurrida.

*Número:* 324      *Resuelto:* 31 de diciembre de 1963

*Norman A. Pardo,* abogado de la recurrente; *Alberto Picó,* y *Francisco A. Rosa Silva,* abogados de la recurrida.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En ciertas áreas de la responsabilidad extracontractual es frecuentemente imposible formular reglas precisas para determinar con certeza de mecanismo electrónico la procedencia o improcedencia de una reclamación. Dadas estas circunstancias entra en juego el comodín (*joker*) de que cada caso será resuelto conforme a sus hechos particulares y específicos. Que es una forma eufemista de advertir que es preciso ser muy cuidadoso en la presentación de la prueba para que el juzgador pueda disponer de todos los elementos indispensables para formar el juicio más adecuado.

Una de las áreas a que nos hemos referido es la relativa a la responsabilidad de un porteador público por arranques o sacudidas al iniciar o detener la marcha. Debemos partir de la generalización tan común que ha adquirido carácter de estribillo al efecto de que un porteador no es un asegurador, fórmula que evaluada propiamente sólo equivale a afirmar que no tiene responsabilidad absoluta o sin culpa. Se le requiere, no obstante, el más alto grado de cuidado y prudencia. En cuanto al acto específico que consideramos, basta señalar que no existe norma fija para determinar las ocasiones en que se debe responder por una arrancada o sacudida, excepto que a) se admiten como incidentes comunes y usuales de la transportación moderna, que todo pasajero debe conocer y anticipar; b) a menos que se trate de arranques, sacudidas o paradas violentas, extraordinarias o inusitadas; y, c) cuando aun no siendo ése el caso, se trata de un pasajero que por su apariencia y condiciones físicas es

merecedor de un cuidado o trato especial. Otro factor a considerar es el lugar en donde ocurre ́el accidente, o sea, si el perjudicado se encuentra o no en un lugar seguro, "a salvo," como dijimos en *Callander* v. *White Star Bus Lines, Inc.*, 57 D.P.R. 168 (1940), que significa que una vez haya traspasado la puerta del vehículo el conductor no está en el deber de mantenerlo detenido hasta que el pasajero se haya sentado. En general, véanse, *Hoskins* v. *Albuquerque Bus Company*, 382 P.2d 700, 706 (N.M. 1963); *Cincinnati, Newport & Covington Transp. Co.* v. *Fischer*, 357 S.W.2d 870 (Ky. 1962); *Sunthimer* v. *Baltimore Transit Company*, 141 A.2d 527 (Md. 1958); Anotación, *Motor carriers' liability for injury to passenger by sudden stopping, starting or lurching of conveyance*, 57 A.L.R.2d 5 (1958); Blashfield, *Cyclopedia of Automobile Law and Practice*, vol. 4, Sec. 2156.

■ En las determinaciones de hechos del tribunal de instancia en el presente caso se indica que "Según el testimonio de la demandante, único prestado en relación con la forma en que ocurrió el accidente, éste ocurrió en la siguiente forma: cuando ella abordó la guagua y depositó la moneda del pasaje en el recipiente correspondiente 'el chofer arrancó de repente' cayendo ella al piso. Según admitió en la repregunta, ella 'no estaba agarrada de nada' cuando cayó. Esta es toda la explicación que da la demandante y esa es, en lo esencial, toda la prueba de cómo ocurrió el accidente que ha motivado el pleito." En verdad el largo testimonio de la demandante contiene únicamente dos pasajes aislados que presentan su versión de los hechos. En el examen directo afirmó que "el chofer súbitamente echó a caminar y yo perdí el control." No se describe cómo fue esta sacudida o arrancada; simplemente se califica la misma de súbita. Pero esta manifestación no tiene más alcance que el de señalar que fue inesperada para ella, pues como dice posteriormente en el contrainterrogatorio, "Yo deposité la moneda y el chofer arrancó y yo me fuí [al suelo] . . . y como *yo no esperaba ese golpe* . . ."

Hemos de recurrir al testimonio del conductor—no contradicho en cuanto a este extremo—para determinar que la sacudida o arranque fue normal y usual: "Yo seguí mi marcha como siempre . . .", la guagua "salió suave de su carril." Bajo tàles circunstancias, forzoso es concluir que no erró el tribunal a quo. Desde *Callander* v. *White Star Bus Line, Inc.*, supra, hemos resuelto que el conductor de un autobús no es responsable por impactos o sacudidas *leves* cuando el pasajero se encuentra a salvo dentro del vehículo. No existe responsabilidad cuando la sacudida o el impacto es normal.

Esta regla tiene un fundamento fácilmente discernible en las exigencias de la transportación moderna. Si sostuviéramos que el conductor incurre en negligencia aún en casos de sacudidas leves, la única forma de resguardarse de responsabilidad sería esperando que todos y cada uno de los pasajeros ocupara asiento antes de proseguir la marcha. El hecho de que el mayor porteador público en Puerto Rico, la Autoridad Metropolitana de Autobuses, transportó 65,214,129 pasajeros en el período de 1961–62, 63,001,006 en 1960–61 y 60,342,052 en 1959–60 es el mejor índice de que no puede adoptarse una norma tan estricta.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 4 de abril de 1960.*