499 P.2d 694

**FIRST WESTERN SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee,**

v.

**HOME SAVINGS AND LOAN ASSOCIA-TION, Defendant-Appellant.**

**No. 789.**

Court of Appeals of New Mexico.

June 23, 1972.

Jack Smith, Edwin E. Piper, Jr., Albuquerque, for defendant-appellant.

Paul A. Phillips, Albuquerque, for plaintiff-appellee.

OPINION

HENDLEY, Judge.

Plaintiff recovered judgment against defendant in a breach of contract and negligence action. Defendant's appeal relates to: (1) statute of limitations; (2) breach of contract; (3) substantial evidence; (4) damages, and (5) subject matter of the contract. Plaintiff's cross-appeal relates to the failure of the trial court to give plaintiff prejudgment interest. Defendant's first point is dispositive of the appeal. We reverse.

Defendant claims that plaintiff's action was barred by the six-year limitation in § 23–1–3, N.M.S.A.1953 (Repl.Vol. 4).

The predecessors of plaintiff and defendant entered into a loan servicing agreement whereby defendant was to service certain loans owned by plaintiff on properties in Albuquerque. Among the loans to be serviced was the Sanchez real estate contract.

At the time of the loan servicing agreement on January 20, 1960 the indebtedness due on the Sanchez loan to plaintiff was $2,979.24. The loan servicing agreement required defendant to use its "best efforts to effect prompt collection."

On March 16, 1961, defendant informed plaintiff that it was going to foreclose on the Sanchez contract and requested of plaintiff the necessary papers. Plaintiff sent the papers to defendant on March 18, 1961.

In responding to plaintiff's status request on the contract, defendant replied on December 28, 1962, that payment had been made by Sanchez in the amount of $40.00, May 1, 1962. Although not material to this appeal the payment was actually made May 1, 1960. Prior to December, 1964 defendant had been servicing over 100 loans including the Sanchez contract. During December, 1964 defendant purchased all of the loans except for the Sanchez contract and four others.

In August, 1967 plaintiff inquired as to the status of the five outstanding uncollected loans. Defendant replied on September 5, 1967 enclosing a check for two of the loans and stated that they were checking into their files regarding the other three loans (one being the Sanchez contract). On September 11, 1967 defendant replied to plaintiff stating it could not find any papers on the Sanchez contract and the other two loans and requested Xerox copies of the Sanchez papers. The copies were sent to defendant on September 18, 1967. Plaintiff again wrote defendant on November 3, 1967 stating it had not heard from defendant since sending the copies. On February 23, 1968 defendant responded and stated that, in regard to the Sanchez loan, defendant's file "did not include any documents." On April 1, 1968 plaintiff demanded of defendant the principal and interest due on the Sanchez contract. On April 5, 1968 defendant denied responsibility and this action was filed November 7, 1968. Trial was held on March 18, 1971 which resulted in a judgment in favor of plaintiff plus interest from the date of judgment.

The trial court made findings of fact Nos. 8, 9, 10 and 11, and conclusion of law No. 1 which state:

"8. That the defendant Home Savings and Loan and now Sandia Savings and Loan did not collect this indebtedness pursuant to their agreement with the plaintiff.

"9. By reason of Defendant's breach of the agreement Plaintiff was damaged.

"10. And [sic] Agreement that the plaintiff knew that this document and agreement was not being enforced; they knew that the payments were not being collected and they knew this for a period of approximately six and one-half or seven years, and during that period of time they did nothing to enforce the agreement or see that the agreement was carried out or fulfilled.

"11. That the plaintiff did have a duty to mitigate their damages and that they failed to take proper steps during this period of time to do so.

"1. Sandia Savings and Loan Association is liable for damages to First Western Savings and Loan Association for breach of the contract between First Western Savings and Loan Association and Home Savings and Loan Association dated January 20, 1960."

Defendant contends that, in view of the court's findings, it should have adopted defendant's requested conclusions of law that the claim was barred by § 23-1-3, supra.

As stated in Goldie v. Yaker, 78 N.M. 485, 432 P.2d 841 (1967):

"Under § 21-1-1(52) (B) (a) (2), N.M. S.A. 1953, the trial court must find such ultimate facts as are necessary to determine the issues. 'Ultimate facts' means the essential and determinative facts on which the conclusion is reached. A judgment cannot be sustained on appeal unless the conclusion upon which it is based finds support in the findings of fact * * *."

There are stipulated facts that plaintiff received status reports on the Sanchez loan from defendant continuously from January, 1960 through February, 1971. Defendant requested all papers necessary to foreclose the Sanchez loan on March 16, 1961. Plaintiff's reply letter dated March 18, 1961 enclosed the necessary papers for the foreclosure. No foreclosure action had been taken on the Sanchez loan throughout the period plaintiff was receiving the monthly status reports, nor when this suit was initiated on November 7, 1968. Plaintiff had actual notice that defendant had not proceeded with their foreclosure action beginning with the first monthly loan status report following the March 18, 1961 reply letter by plaintiff.

There is evidence to support the trial court's finding No. 10. On appeal the evidence is viewed in the light of the presumptive correctness of a trial court's judgment. However this, presumption does not " * * * replace the requirement that the judgment must be supported by findings, which in turn must be supported by substantial evidence." Payne v. Tuozzoli, 80 N.M. 214, 453 P.2d 384 (Ct.App.1969).

Here, we have a supported finding which is contrary to a conclusion that the action accrued within the statutory six-years. Plaintiff made no objection to this finding and he cannot now complain. Trinidad Industrial Bank v. Romero, 81 N.M. 291, 466 P.2d 568 (1970). The finding supports a conclusion, as submitted and pleaded by defendant, that the action was barred by the statute of limitations.

From the foregoing it must necessarily follow that the trial court erred in its conclusion No. 1. Ed Black's Chevrolet Center, Inc. v. Melichar, 81 N.M. 602, 471 P.2d 172 (1970).

Our reversal of the judgment for plaintiff necessarily carries with it a determination that plaintiff's cross-appeal has no merit.

Reversed and remanded with directions to set aside the judgment and enter an order of dismissal.

It is so ordered.

COWAN, J., concurs.

SUTIN, J. (dissenting).

SUTIN, Judge (dissenting).

I respectfully dissent.

The majority opinion concluded that finding No. 10 of the trial court was sufficient to bar plaintiff's action under the Statute of Limitations. It overlooks our duty on review to support the trial court's judgment. I disagree for the following reasons:

(1) *The Defendant's Contention on Appeal does not Agree with the Majority Opinion.*

In its brief in chief, defendant stated:

The first three points concern the same basic issue pertaining to the Statute of Limitations as a bar to plaintiff's claim. This separate defense was set forth in defendant's answer (Tr. 16) and was brought to the Court's attention at the commencement of the trial (Tr. 56) and was later asserted in support of defendant's Motion to Dismiss at the close of plaintiff's case (Tr. 152). In addition, defendant requested a specific finding and conclusion that plaintiff's claim, if any, was barred by the Statute of Limitations . . . . *Despite this, the trial court did not expressly find or conclude on this material issue.* [Emphasis added.]

After setting forth the trial court's finding No. 10, the defendant stated:

It is respectfully submitted that this finding of the Court clearly required the Court *to further find* and conclude that the claim of plaintiff was barred by the Statute of Limitations. [Emphasis added.]

The majority opinion states:

[It is defendant's contention] that in view of the court's findings that it should have adopted defendant's requested con-

clusion of law that the claim was barred by [the statute of limitation].

This is not a correct statement of defendant's contention.

### (2) *The Trial Court's Findings Support its Conclusions.*

On November 7, 1968, plaintiff sued the defendant for damages for breach of a written contract. This contract was called "SERVICING AGREEMENT." The defendant agreed to service over 100 loans for the plaintiff for a service charge. Thirteen separate and distinct duties of the defendant were set forth. The defendant agreed to service the loans continuously from January 20, 1960, until the principal and interest were paid in full or until the termination of the contract upon 30 days' written notice from plaintiff. Of the thirteen duties imposed upon defendant, plaintiff claims the defendant violated five of them.

The trial court made findings of fact and conclusions of law sufficient to grant the judgment. It found that the defendant did not collect this indebtedness *pursuant to their agreement* with plaintiff, and by reason of defendant's breach of the agreement plaintiff was damaged; that on April 1, 1968, plaintiff demanded of defendant that it compensate plaintiff for its damages and on April 5, 1968, this demand was refused.

Findings Nos. 10 and 11, set forth in the majority opinion, were stated for purposes of fairness in concluding, (1) that plaintiff was entitled to interest from the date of the judgment, not from the time demand was made; and (2) that "Each party will bear their own costs." Neither defendant in its brief nor finding No. 10, nor the majority opinion stated when the statute started to run and what caused it to start. This case was tried March 18, 1971. Finding No. 10 can be interpreted to mean 6½ or 7 years prior to 1971.

The trial court was sufficiently alerted to the defense of Statute of Limitations and knew what it was doing. The trial court's specific refusal of defendant's proposed finding of the bar of the Statute of Limita-

tions is equivalent to a direct finding to the contrary. It is our duty to reconcile seeming inconsistency on the requested findings before placing the trial court in the position of doing the absurd thing of finding that the Statute of Limitations did not apply and did apply. Hartzell v. Jackson, 41 N.M. 700, 73 P.2d 820 (1937). Any doubt as to the meaning of finding No. 10 must be resolved to support the judgment. Hay v. New Mexico State Highway Department, 66 N.M. 145, 343 P.2d 845 (1959). Even if we considered finding No. 10 uncertain, doubtful or ambiguous, on review, we must indulge every presumption in favor of the correctness of the judgment. Renfro v. San Juan Hospital, Inc., 75 N.M. 235, 403 P.2d 681 (1965). Finding No. 10 is not contrary to the conclusion that plaintiff was entitled to judgment.

### (3) *The Statute of Limitations did not bar Plaintiff's Claim for Relief.*

Sections 23–1–1 and 23–1–3, N.M.S.A. 1953 provide that actions founded on contracts in writing may be brought within six years, *"after their causes accrue,* and not afterwards." When did the cause of action accrue in this case?

A cause of action exists when a primary right possessed by the plaintiff has been invaded by the defendant who has violated a corresponding duty by some wrongful act or omission. York v. American Nat. Bank of Silver City, 40 N.M. 123, 55 P.2d 737 (1963). Under the servicing agreement, plaintiff's primary right was that all of its loans be serviced by the defendant. The defendant's corresponding duty was to service all of the loans in the manner specified in the contract. One duty the defendant had was to use its *"best efforts* to effect prompt collection of *all* payments due * * * as and when due."

Now, when did the defendant wrongfully fail to use its "best efforts" to collect all payments due on over 100 loans, including the Sanchez loan? The fact that plaintiff knew the payments were not being collected and did nothing about it does not con-

stitute a finding that defendant wrongfully failed to use its "best efforts."

The record shows that on December 26, 1962, within the six year period, plaintiff wrote defendant requesting advice as to the status of the Sanchez loan. On December 28, 1962, the defendant replied that the last payment was made May 1, 1962, in the sum of $40.00, and that the balance was $2,997.26. Up to this point, there is no evidence that defendant had violated its duty to use its "best efforts."

On August 30, 1967, plaintiff wrote defendant asking for assistance in solving what appeared "to be a serious infraction of the servicing agreement." The Sanchez loan was mentioned.

On September 5, 1967, defendant replied, enclosing a check for $456 representing collections for loans *which were current;* that the files would be studied, the properties inspected and an attempt made to contact borrowers.

On November 29, 1967, defendant wrote plaintiff about three loans, including the Sanchez loan, stating the property was for all practical purposes, valueless and that the only solution was to write the loan off. It was on this date that defendant stated " * * * we shall do nothing further until hearing your desires."

A reasonable inference can be drawn that prior to November 29, 1967, defendant was using its "best efforts."

Correspondence continued, and on April 1, 1968, plaintiff demanded payment of principal and interest of the Sanchez loan "on the basis of failure on the part of" defendant "to service the subject loans." On April 5, 1968, the demand was refused. On November 7, 1968, suit was filed.

This was a continuing contract. It specifically provided that defendant shall service all the loans continually from the date of the agreement until the principal and interest were paid in full or until the termination of the servicing agreement. Even if there were several breaches of this contract, plaintiff was not obliged to treat the contract as abandoned. On September 5, 1967, some of the loans were current. The statute does not begin to run until plaintiff elects to rely no longer on performance by the defendant. The plaintiff can wait until the time arrives for complete performance by defendant, and then bring an action for breach of contract. Union Sugar Co. v. Hollister Estate Co., 3 Cal.2d 740, 47 P.2d 273 (1935); Benton v. Roberts, 41 Ga.App. 189, 152 S.E. 141 (1930); Rosenstock v. Congregation Agudath Achim, 118 Ga.App. 443, 164 S.E. 2d 283 (1968); City and County of Dallas Levee Imp. Dist. v. Halsey, Stuart & Co., 202 S.W.2d 957 (Tex.Civ.App.1947); Skidmore, Owings & Merrill v. Connecticut G. L. Insurance Co., 25 Conn.Sup. 76, 197 A.2d 83 (1963). See Prichard v. Fulmer, 25 N.M. 452, 184 P. 529 (1919).

Prior to December 31, 1964, defendant was servicing over 100 loans for plaintiff. On that date, defendant purchased all but five loans, including the Sanchez loan. A reasonable inference can be drawn that defendant had used its "best efforts" to collect 100 loans. No reasonable or logical reason can be found that a cause of action accrued before that date. If there were evidence that defendant did not use its best efforts to collect one loan out of over 100 before December 31, 1964, the Statute of Limitations would not begin to run on the one loan. It would not begin to run until plaintiff slept on its duties to such an extent that plaintiff elected to rely no longer on defendant's performance. This occurred on April 5, 1968.

It is obvious that the cause of action did not accrue before December 28, 1962, on the Sanchez loan. This was within the six year period. The Statute of Limitations did not bar plaintiff's cause of action because it did not accrue more than six years before the complaint was filed.